IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DELAWARE MOTEL ASSOCIATES, INC.; INDEPENDENCE MANAGEMENT ASSOCIATES, INC.; C. PATEL CO. LLC; TURKEY FOOT LAKE ROAD LAND HOLDINGS, LLC; CHAMPAKBHAI N. PATEL and JASHVANTI C. PATEL, | )<br>)<br>)<br>)<br>)<br>)<br>) |
| Plaintiffs, | ) Case No. 17-CV-01715 |
| v. | )<br>)<br>) Hon. Matthew F. Kennelly |
| LEHMAN BROTHERS BANK, FSB; LEHMAN BROTHERS/GP INC.; LEHMAN BROTHERS INC.; LEHMAN BROTHERS HOLDINGS INC.; CAPITAL CROSSING SERVICING COMPANY LLC; CAPITAL CROSSING HOLDINGS LLC; PHOENIX ASSET OPTIMIZATION LLC; PHOENIX ASSET MANAGEMENT, LLC; ADVANCED APPRAISAL GROUP, INC.; ADVANCED APPRAISAL CONSULTANTS, INCORPORATED; ADVANCED APPRAISAL CONSULTANTS, LLC; WILLIAM DADDONO; WOLIN & ROSEN, LTD.; SMITHAMUNDSEN LLC, THE STATE BANK OF TEXAS; CHANDRAKANT PATEL; HIREN PATEL and EDWARD FITZGERALD, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

**MOTION FOR LEAVE TO FILE AMENDED COMPLAINT AND TO NAME ADDITIONAL DEFENDANTS TARRANT CAPITAL ADVISORS, INC.; TPG GLOBAL, LLC; TPG CAPITAL, L.P.; TPG GROUP HOLDINGS (SBS) ADVISORS, INC.; TPG SPECIALTY LENDING, INC.; TPG OPPORTUNITIES PARTNERS, L.P.; NICHOLAS LAZARES, RICHARD WAYNE; DAVID BONDERMAN and JAMES G. COULTER**

**NOW COME** the Plaintiffs by and through their attorney PAUL CAGHAN and for Plaintiffs' Motion for Leave to File Amended Complaint *Instanter* and to Name Additional Defendants state as follows:

1

## I. Plaintiffs' motion for leave to amend and name additional defendants must be granted.

Plaintiffs request leave to amend and name the following additional defendants: Tarrant Capital Advisors, Inc., TPG Global, LLC, TPG Capital, L.P., TPG Group Holdings (SBS) Advisors, Inc., TPG Specialty Lending, Inc. and TPG Opportunities Partners, L.P., Nicholas Lazares, Richard Wayne, David Bonderman and James G. Coulter.

Leave to amend pleadings under Rule 15(a) should be freely given in absence of any apparent or declared reason, such as undue delay, bad faith, or dilatory motive on movant's part, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to opposing party by virtue of allowance of amendment, or futility of amendment. *Foman v. Davis* (U.S. 1962), 371 US 178, 83 S Ct 227; *Hageman v. Signal L. P. Gas, Inc.* (6th Cir. Ohio 1973), 486 F2d 479, 72 Ohio Op 2d 271. Rule 15(a) which provides for liberal amendment after responsive pleadings have been filed has been interpreted and applied by federal courts in liberal fashion absent some justifications for refusal. *Hess v. Gray* (N.D. Ill. 1979), 85 FRD 15, 29 Fed R Serv 2d (Callaghan) 565. Leave to amend should be freely given unless it appears to certainty that plaintiff would not be entitled to any relief under any state of facts which could be proved in support of his claim. *Stern v. United States Gypsum, Inc.* (7th Cir. Ill. 1977), 547 F2d 1329, cert. denied, (U.S. 1977), 434 US 975, 98 S Ct 533, 54 L Ed 2d 467.

**(A)  The TPG defendants must be added to the lawsuit.**

Pursuant to Fed. R. Civ. P. 19(a), party should be joined, when feasible, if (1) in person's absence complete relief cannot be accorded among those already parties. *Hutchins v. Cardiac Sci., Inc*. 456 F. Supp.2d 173 (D. Mass. 2006). Joinder is authorized of all parties whose presence in lawsuit is required for fair and complete resolution of dispute at issue. *EEOC v. Commercial Coating Serv*. 220 FRD 300 (S.D. Tex. 2004). In deciding joinder motions under Rule 19,

pragmatic considerations, rather than rigid formalism, are emphasized—maximum effective relief with minimum expenditure of judicial energy. *Gentry v. Smith* 487 F2d 571, 18 Fed R Serv 2d (Callaghan) 221(5th Cir. Fla. 1973).

The TPG defendants are necessary to a complete determination of relief among those already parties to the lawsuit. TPG purchased $600,000,000.00 of old National Republic Bank commercial accounts from the FDIC. The State Bank of Texas purchased $300,000,000.00 of the accounts.

TPG is one of the largest diversified alternative investment firms in the world, "with total assets under management of approximately $48.3 billion as of September 30, 2010." (See **Exhibit B**, *SEC Form 10*, TPG Specialty Lending, Inc., Registrant, filed January 14, 2011, p. 3, par. 4). TPG is now collecting on the old National Republic Bank accounts and dunning and suing the customers through its dedicated service company, Capital Crossing Servicing Company LLC ("Capital Crossing").

TPG Opportunities Partners, L.P. ("TOP") was formed in 2009 as TPG's distressed and special situations platform. According to TPG, "TOP has a team of over 20 dedicated professionals and collectively brings extensive experience in the credit markets and special situations investing." (See **Exhibit B**, SEC Form 10, *TPG Specialty Lending, Inc., Registrant*, filed January 14, 2011, p. 3, par. 4). Since 2010, TOP has had the expertise of investment advisers Alan Waxman and Joshua Easterly. Alan Waxman "was the co-founder of the Goldman Sachs Specialty Lending Group ("GSSLG") and Joshua Easterly is the former co-head of GSSLG." (*Id.*, p. 3 par. 3-4).

By custom and practice, senior partners of TPG most likely reviewed and approved TPG's purchase from the FDIC. (*Id.*, p. 3, par. 3). The names of the proposed TPG defendants are as

3

follows: Tarrant Capital Advisors, Inc., TPG Global, LLC, TPG Capital, L.P., TPG Group Holdings (SBS) Advisors, Inc., TPG Specialty Lending, Inc. and TPG Opportunities Partners, L.P. (hereinafter collectively "TPG")

The addition of David Bonderman and James G. Coulter as defendants is supported by the fact that David Bonderman and James G. Coulter are owners of TPG and apparently engaged in day to day management and strategic decision-making for their companies. David Bonderman and James G. Coulter are 100% shareholders and hold the beneficial interests of securities which control TPG Group Holdings (SBS) Advisors, Inc., TPG Global, LLC and affiliates. (See U.S. Securities and Exchange Commission, SEC Form 13D/A, *General statement of acquisition of beneficial ownership*, TPG Group Holdings (SBS) Advisors, Inc., filed March 27, 2017).

**(B)    TPG knew that National Republic Bank's hotel and motel loans were inflated and that the appraisals were fraudulent.**

Due diligence by TPG prior to the assignment purchase in 2015 would have revealed the fraud scheme. However, TPG's knowledge of wrongdoing at National Republic Bank occurred much earlier, in 2011, years before the purchase. TPG has superior expertise in such alternative investment vehicles. Evaluation of William Daddono's appraisals and value conclusions by any qualified real estate professional would have revealed National Republic Bank's fraud scheme involving appraisals.

William Daddono's appraisal methodology was based on deception and fraud. Hans Detlefsen, MPP, MAI is an expert in hotel appraisal and founder of Hotel Appraisers and Advisors in Chicago. Mr. Detlefsen has led some of the largest hospitality consulting assignments in the country, including a portfolio of market studies for the U.S. Army's privatization of lodging facilities. Mr. Detlefsen was part of the valuation team that appraised all Hilton-owned properties including The Blackstone Group's acquisition of Hilton Hotels in 2007, and provided feasibility

4

studies and market research for several of the largest convention hotels in the world, including the Hyatt Regency McCormick Place Chicago, Hilton Baltimore, Hilton Omaha, Hyatt Grand San Antonio, and several Gaylord hotels and convention centers. (See **Exhibit C**, p. 3, *Curriculum Vitae of Hans Detlefsen, MPP, MAI*).

Mr. Detlefsen's educational background includes a B.A. in Politics & Economics from University of Notre Dame and Masters Degree in Public Policy from University of Chicago. He has been a guest speaker and panel moderator for numerous industry organizations, such as the Appraisal Institute, the Midwest Lodging Investors Summit (MLIS), the North America Hotel Investment Conference (NATHIC), the Hotel Investment Networking Conference (THINC), and the Public-Private Partnership Conference (P3C). Further details of his professional qualifications and experience are attached. (See **Exhibit C**, p. 3, *Curriculum Vitae of Hans Detlefsen, MPP, MAI*).

Hans Detlefsen reviewed William Daddono's appraisal reports for the hotel properties at 3450 Hoyt and 3380 Hoyt, Muskegon, Michigan in the case of *Saleh v. Merchant*. (See **Exhibit C**, *Declaration of Hans Detlefsen, MPP, MAI;* Appraisal Review, Days Inn Appraisal 3450 Hoyt Street; Appraisal Review, Super 8 Appraisal 3380 Hoyt Street). It is apparent that substantial portions of Willliam Daddono's appraisal reports and value conclusions are fraudulent and misleading.

Analysis of William Daddono's appraisal report of 3380 Hoyt Street, Muskegon, Michigan, revealed the following:

**(1)  Appraisers claim to be using a yield capitalization methodology but violate the data requirements for that methodology.**

In the Income Capitalization chapter of their report the appraisers at Advanced Appraisal claim to use the yield capitalization methodology to achieve the valuation of 3450 Hoyt Street.

5

(See **Exhibit D**, Appraisal of 3450 Hoyt Street, Muskegon, Michigan, *Advanced Appraisal Group*, February 24, 2006, pp. 82-85). Their data, however, is faulty. Instead of using actual data from the subject property the appraisers use substitute figures from properties claimed to be comparable but which in fact are not. (See **Exhibit C**, *Declaration of Hans Detlefsen, MPP, MAI; Appraisal Review, Days Inn Appraisal,* pp. 10-11, par. 1). The revenue per available room (RevPAR) levels shown in the substitute properties are more than three times as high as the most recent RevPAR levels achieved by the subject property. (*Id*.)

**(2)    Appraisers underestimated Operating expenses and over-estimated the Income potential for the subject property.**

The line item entitled "Administrative and General expense" includes "accounting fees, attorneys fees, bad debts, bank charges, donations, hotel association dues, subscriptions, and other miscellaneous items" but omits two of the largest items typically included in this line item: (1) General Manager's salary and benefits and (2) credit card commissions. Though the appraisers claim that the Administrative and General expense line item is 3.0 percent (%) of gross revenues, the HOST data shown in the report (p. 85) reflects that a more typical expense ratio for this line item is 12.2 percent (%) which is the industry average for economy hotels. (See **Exhibit C**, *Declaration of Hans Detlefsen, MPP, MAI; Appraisal Review, Days Inn Appraisal,* p. 11, par. 3).

**(3)    Appraisers underestimated Marketing expenses for the subject property.**

The appraisers underestimate marketing expenses by claiming that Projected Marketing Expenses are stabilized at 1.0 percent (%) of gross revenues when the HOST data in their report show a more typical expense ratio would be 3.50 percent (%) of gross revenues. (*Id*., p. 11, par. 4).

**(4)    Appraisers underestimated Utility expenses.**

Utility expenses were underestimated at 9.00 percent (%) of gross revenues ($39,696) when the most recent actual figures were much higher ($50,345). The appraisers failed to provide a convincing explanation of why the utility expenses would be expected to decline so substantially. (*Id*., p. 11, par. 5).

**(5)** **Appraisers underestimated Property and Maintenance expenses.**

The appraisers claim that Property and Maintenance expenses would be 4.00 percent (%) of gross revenues or $17,643, when the actual most recent Property and Maintenance expense amount was $49,206. (*Id*., pp. 11-12, par. 6).

**(6)** **Appraisers underestimated Insurance expenses.**

The appraisers claim that insurance expenses would be 2.00 percent (%) of gross revenues when actual recent figures show the expenses to be higher. (*Id*., p. 12, par. 7).

**(7)** **Appraisers underestimated Franchise Fee expenses.**

The appraisers show a Franchise Fee expense of 6.5 percent (%) of gross revenue when the actual franchise fee expense item would be 7.4 percent (%) of projected room revenue. (*Id*., p. 12, par. 8).

**(8)** **Appraisers underestimated the Discount Rate for the subject property.**

The appraisers selected a discount rate of 12.00 percent (%) when the published average for the limited service segment of economy hotels would be closer to 13.20 percent (%). The appraisers selected a discount rate that is 120 points below the published average. (*Id*., p. 12, par. 9).

**(9)** **Appraisers failed to include Major Capital Expenditures in calculating the income potential of the subject property.**

The appraisers over-estimated the income potential for the subject property by omitting mention of capital expenditures. The appraisers used a discounted cash flow analysis, including a

reversion analysis, which is considered appropriate and relevant for hotel appraisals of this nature. However, the appraisers failed to include in this analysis a discussion of capital expenditures that a typical buyer would need to achieve the financial projections used by the appraisers. A capital deduction should have been included as part of the discounted cash flow analysis, but was not. (*Id*., pp. 12-13, par. 10).

> **(10) Appraisers inflated the value conclusions by improper adjustments to the Comparable Sales.**

Sales comparisons are used by the appraisers to justify a value conclusion of $1,100,000.00 for the Days Inn, 3450 Hoyt, Muskegon, Michigan. These sales comparisons used an improper adjustment methodology to inflate the valuation.

The appraisers refer to a "net income per room adjustment" which is applied to the seven (7) sales comparisons. This approach caused the value conclusion to be fraudulently inflated. The Sales Comparison Approach stands alone as a valuation tool and should not be modified by any income capitalization formula as was done by Advanced Appraisal Group. (*Id*., pp. 12-13, par. 10).

> **(11) William Daddono's fraud scheme to inflate value conclusions in his appraisals followed a pattern.**

William Daddono, currently incarcerated at the Metropolitan Correctional Center, Chicago, worked hand-in-glove for years with officers of the failed bank to produce false and inflated appraisals for use by National Republic Bank. The fraud scheme to inflate value conclusions in the appraisal reports followed a pattern. The report for 3380 Hoyt Street, for example, contained the same misleading type of statements as the report for 3450 Hoyt. (See **Exhibit E**, Appraisal of 3380 Hoyt Street, Muskegon, Michigan, *Advanced Appraisal Group*, March 7, 2007, pp. 58-66). William Daddono's valuation for 3380 Hoyt was misleading in the

8

following subject areas: (1) RevPAR levels; (2) Administrative and General expense; (3) Projected Marketing expense; (4) Franchise fees; (5) Discount rate; (6) Capital expenditures; and (7) Adjustment of the Sales Comparison Approach. (*Id*.)

> **(C)** **TPG knew that Edward Fitzgerald and Hiren Patel were under personal financial pressure from the Treasury Department to sell their foreclosed hotels and motels.**

TPG likely knew over 10 years ago that directors of National Republic Bank, Hiren Patel and Edward Fitzgerald, were under personal financial pressure by the Treasury Department to sell the bank's foreclosed hotels and motels. In 2003, the U.S. Comptroller of the Currency and National Bank Examiner found that National Republic Bank had an excessively high outstanding balance of loans to the hotel/motel industry. (See **Exhibit F**, *Consent Order*, #2003-69, *In the Matter of National Republic Bank*, U.S. Department of the Treasury, Office of the Comptroller of the Currency, July 2, 2003). The Treasury Department and the Bank's directors entered into a Consent Order which outlined a remedial plan to decrease the outstanding balance of the hotel/motel loans. As Directors of the bank, Hiren Patel and Edward Fitzgerald were signatories to the Consent Order. (*Id*.)

The Consent Order required the bank to meet targets for the ratio of loans to the hotel/motel industry. Failure to meet the targets for Tier 1 and Tier 2 capital would obligate the Directors to make capital injections into the bank. The Order required the payment of six million ($6,000,000.00) by September 30, 2003. (*Id*., pp. 1-8).

Pursuant to the Order, failure to meet Tier 1 and Tier 2 capital requirements going forward would have required Hiren Patel and Edward Fitzgerald, as Directors, to pay millions of dollars out of their own pockets for injection into their bank. (*Id*.)

In April 2010, the U.S. Comptroller of the Currency found that National Republic Bank had "unsafe and unsound banking practices relating to concentrations of credit" and barred NRB from any new commercial loans without prior permission of the Assistant Deputy Comptroller. However, the restriction did not apply to "the renewal, extension, or restructuring of any loan, provided no new funds are advanced". (See **Exhibit G**, *Agreement by and Between The National Republic Bank of Chicago and The Comptroller of the Currency, #2010-077, In the Matter of National Republic Bank*, U.S. Department of the Treasury, Office of the Comptroller of the Currency, April 2, 2010, pp. 1, 6-7). The racketeering enterprise continued.

The addition of proposed defendants Nicholas Lazares and Richard Wayne is supported by the fact that Mr. Lazares and Mr. Wayne are the owners of Capital Crossing Servicing Company LLC. This is according to Chris Gair (attorney for Lehman Brothers) who revealed that the former owners of Capital Crossing Bank (Nicholas Lazares and Richard Wayne) are now the owners of Capital Crossing Servicing Company LLC. (See **Exhibit H**, *Letter from Chris Gair dated March 9, 2017*, p. 2, redacted).

The addition of proposed defendants David Bonderman and James G. Coulter is supported by the fact that David Bonderman and James G. Coulter are owners of TPG and apparently engaged in day to day management and strategic decision-making.

Plaintiffs seek to dismiss with prejudice the following defendants: Lehman Brothers Bank, FSB; Lehman Brothers, Inc.; Lehman Brothers/GP Inc.; and Lehman Brothers Holdings, Inc.

**WHEREFORE**, Plaintiffs request that this Honorable Court enter an order granting leave to Plaintiffs to name additional defendants TARRANT CAPITAL ADVISORS, INC.; TPG GLOBAL, LLC; TPG CAPITAL, L.P.; TPG GROUP HOLDINGS (SBS) ADVISORS, INC.; TPG SPECIALTY LENDING, INC.; TPG OPPORTUNITIES PARTNERS, L.P.; NICHOLAS

LAZARES, RICHARD WAYNE; DAVID BONDERMAN and JAMES G. COULTER, to file the

Amended Complaint *instanter*, and for further relief as requested above.

                                **PLAINTIFFS**
**DELAWARE MOTEL ASSOCIATES, INC.**
**INDEPENDENCE MANAGEMENT**
**ASSOCIATES, INC., C. PATEL CO. LLC**
**TURKEY FOOT LAKE ROAD LAND**
**HOLDINGS, LLC, CHAMPAKBHAI N.**
**PATEL, JASHVANTI C. PATEL**


/s/     Paul Caghan


PAUL CAGHAN (A.R.D.C. #3123213)
LAW OFFICE OF PAUL CAGHAN, P.C.
*Attorney for Plaintiffs*
300 North LaSalle Street
Suite 4925
Chicago, Illinois 60654
(773) 469-8724
caghan@ameritech.net

**CERTIFICATE OF SERVICE**

 The undersigned, an attorney, certifies that he properly provided by Electronic Court Filing, emailed or mailed a true and correct copy of the foregoing to the below-mentioned attorneys on April 24, 2017, proper postage and costs prepaid, deposited at Chicago, Illinois, addressed as follows:

  David Giles
  SCHIFF HARDIN LLP
  233 S. Wacker Drive
  Suite 6600
  Chicago, IL 60606

  Robert D. Sweeney
  RDS Law
  111 W.Washington
  Suite 1160
  Chicago, IL 60602

  James P. Sullivan
  Chapman & Cutler LLP
  111 West Monroe
  Chicago, Illinois 60603

         /s/ Paul Caghan