IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DELAWARE MOTEL ASSOCIATES, INC., INDEPENDENT MANAGEMENT ASSOCIATES, INC., TURKEY FOOT LAKE ROAD LAND HOLDINGS, LLC, C. PATEL CO. LLC, CHAMPAKBHAI N. PATEL, and JASHVANTI C. PATEL,<br><br>Plaintiffs,<br><br>v.<br><br>CAPITAL CROSSING SERVICING COMPANY LLC, CAPITAL CROSSING HOLDINGS LLC, ADVANCED APPRAISAL GROUP, INC., ADVANCED APPRAISAL CONSULTANTS, INC., ADVANCED APPRAISAL CONSULTANTS, LLC, WILLIAM DADDONO, WOLIN & ROSEN, LTD., SMITHAMUNDSEN LLC, THE STATE BANK OF TEXAS, CHANDRAKANT PATEL, HIREN PATEL, EDWARD FITZGERALD, PHOENIX NPL, LLC, PHOENIX REO, LLC, TARRANT CAPITAL ADVISORS, INC., TPG GLOBAL, LLC, TPG CAPITAL L.P., TPG GROUP HOLDINGS (SBS) ADVISORS, INC., TPG SPECIALITY LENDING, INC., TPG OPPORTUNITIES PARTNERS, L.P., NICHOLAS LAZARES, RICHARD WAYNE, DAVID BONDERMAN, and JAMES G. COULTER,<br><br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. 17 C 1715 |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

Plaintiffs Delaware Motel Associates, Inc., Independence Management Associates, Inc., C. Patel Co. LLC, Turkey Foot Lake Road Land Holdings, LLC, Champbakbhai Patel, and Jashvanti Patel have sued a number of defendants in

1

connection with an alleged racketeering scheme involving the making of commercial real estate loans based on false and inflated appraisals. According to plaintiffs, the National Republic Bank of Chicago (NRB) paid William Daddono and his associates at Advanced Appraisal Group, Inc., Advanced Appraisal Consultants, Inc., and Advanced Appraisal Consultants, LLC (collectively, Advanced Appraisal) to provide inflated appraisals of real estate properties, and NRB used those false appraisals to issue fraudulent loans with inflated principal amounts. Plaintiffs allege that they were among the debtors who took out the fraudulent loans.

  NRB is no longer an active company and is not a defendant in this case. Plaintiffs have sued Daddono and the Advanced Appraisal entities, as well as Edward Fitzgerald, the former director and president of NRB, and Hiren Patel, the bank's former chief executive officer and chairman of the board. Plaintiffs have also sued Wolin & Rosen, Ltd. and SmithAmundsen LLC, the law firms whose attorneys allegedly prepared the fraudulent loans. In addition, plaintiffs have sued the entities and individuals who allegedly acquired NRB's loans after the bank closed in 2014. Plaintiffs assert that TPG Capital, L.P. purchased NRB's non-performing loans at a face value of $600 million and State Bank of Texas (SBT) purchased the bank's performing loans at a face value of $300 million. According to plaintiffs, TPG Capital and SBT knew that the loans they acquired were based on false appraisals but continued to enforce the loans. In addition to suing TPG Capital and SBT, plaintiffs have sued SBT's chief executive officer, Chandrakant Patel (collectively, the SBT defendants), and certain individuals and entities allegedly related to TPG Capital, including TPG Global, LLC, TPG Group Holdings (SDS) Advisors, Inc., TPG Opportunities Partners, TPG Specialty Lending,

Inc., TPG Opportunities Partners, L.P., Capital Crossing Servicing Company, LLC, Capital Crossing Holdings LLC, Phoenix Asset Optimization LLC, Phoenix Asset Management, LLC, Phoenix, NPL, LLC, Phoenix REO, LLC, Tarrant Capital Advisors, Inc., David Bonderman, James Coulter, Nicholas Lazares, and Richard Wayne (collectively, the TPG defendants).

Plaintiffs assert claims against all defendants under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962(c), alleging they conducted an enterprise that engaged in a pattern of racketeering activity, including acts of mail and wire fraud, bank fraud, extortion, and money laundering. Plaintiffs also allege that defendants conspired to engage in racketeering activity, in violation of 18 U.S.C. § 1962(d), and that they used income derived from their racketeering activity to continue operation of the alleged enterprise, in violation of 18 U.S.C. § 1962(a). In addition to the federal RICO claims, plaintiffs assert state-law claims against all defendants for violation of the Illinois Consumer Fraud and Deceptive Practices Act (ICFA), 815 ILCS 505/2, and for common-law fraud, aiding and abetting fraud, intentional interference with a contract, aiding and abetting intentional interference with a contract, intentional interference with prospective economic advantage, unjust enrichment, and quantum meruit. Wolin & Rosen, the TPG defendants,[1] and the SBT defendants have filed motions to dismiss[2] for, among other things, failure to state a claim and failure to allege

---

[1] Lazares and Wayne, who plaintiffs allege to be strategic decision-makers and managers for Capital Crossing Servicing Company LLC, maintain that they have no affiliation with Capital Crossing and have had no dealings with plaintiffs or any of the other defendants in the suit. They have filed a separate motion for summary judgment that is not yet fully briefed.

[2] In the remainder of this opinion, "defendants" refers to the defendants whose motions to dismiss the Court is addressing in this opinion—that is, Wolin & Rosen, the

3

the circumstances of the alleged fraud with the particularity required by Federal Rule of Civil Procedure 9(b). Bonderman and Coulter, the co-founders of TPG Capital, have moved to dismiss for lack of personal jurisdiction. For the reasons stated below, the Court grants defendants' motions.

**Background**

According to plaintiffs, from 2003 to 2014, NRB encouraged and paid Daddono and Advanced Appraisal to issue inflated appraisals of commercial real estate properties, and NRB allegedly used the inflated appraisals to issue loans with inflated principal amounts and, among other things, sell off foreclosed hotels and motels at inflated prices. Plaintiffs' complaint does not include a specific example of a property with an inflated appraised value, but they allege generally that Daddono "would regularly generate a false appraisal for about twice the actual fair market value, or a markup of one hundred (100%) percent." Am. Compl. ¶ 33. Plaintiffs explain that Fitzgerald and Hiren Patel became motivated to institute the fraudulent enterprise after the issuance of a 2003 consent order following a finding by the United States Comptroller of the Currency and National Bank Examiner that NRB had an excessively high outstanding balance of loans to the hotel and motel industry. According to plaintiffs, the consent order required directors of the bank, including Fitzgerald and Patel, to make capital injections into the bank if it failed to meet a targeted ratio of loans to the hotel and motel industries.

From the complaint, it is unclear when the other defendants are alleged to have become involved in the alleged enterprise. Plaintiffs list Chandrakant Patel and SBT as

---

TPG defendants, and the SBT defendants. At this time, the Court is not ruling on claims asserted against Lazares, Wayne, Fitzgerald, Hiren Patel, Daddono, the Advanced Appraisal entities, or SmithAmundsen.

4

"original members of the enterprise" who began participating in 2003, along with Fitzgerald, Hiren Patel, Daddono, and the Advanced Appraisal defendants. *Id.* ¶ 6. Plaintiffs also allege, however, that it was "[f]rom on or about *January 2006* through January 2014" that Fitzgerald and Hiren Patel had communications with officials at SBT and the TPG entities about the roles that SBT and the TPG defendants would play in the alleged scheme. *Id.* ¶ 38 (emphasis added). During that time, according to plaintiffs, Fitzgerald communicated with SBT and TPG officials "to arrange the continuation of the fraud scheme and profit-sharing among members," and both Fitzgerald and Hiren Patel communicated with SBT and TPG Capital "to arrange the transfer of illegal profits and revenue after [NRB] failed." *Id.*

NRB failed in October 2014, at which point the Office of the Comptroller of the Currency appointed the Federal Deposit Insurance Corporation (FDIC) as receiver. Plaintiffs allege that following the bank's failure, the TPG entities purchased and accepted assignments of the bank's non-performing loans from the FDIC at a face value of $600 million, and SBT purchased and accepted assignments of the bank's performing loans from the FDIC at a face value of $300 million. According to plaintiffs, the SBT and TPG defendants knew as early as 2006 that NRB's loans were fraudulent and based on false appraisals. Plaintiffs allege that it was part of the enterprise's plan that its individual members would "facilitate the continuation of the racketeering enterprise by the purchase and assignment to [SBT] and TPG Capital of the failed bank's loans." *Id.* ¶ 37. According to plaintiffs, the SBT and TPG defendants "were waiting in the wings for years to acquire the loans." *Id.* ¶ 43.

Plaintiffs aver that SBT, the TPG entities, and their top executives and managers

"made a strategic business decision to participate in the false appraisal scheme" for their own personal profit, to maintain their jobs, and to avoid possible criminal charges. *Id.* ¶ 42. According to plaintiffs, the SBT and TPG defendants committed numerous acts of mail and wire fraud, as well as extortion, when they transmitted collection claims, demanded payment, or filed lawsuits based on the allegedly fraudulent loans. With respect to the specific acts that allegedly harmed plaintiffs in this case, plaintiffs allege that TPG Capital and Capital Crossing filed "fraudulent claims" against Delaware Motel in Ohio on June 23, 2016, *id.* ¶ 58; filed "fraudulent collection lawsuits" against Independence Management in Ohio on June 23, 2016, *id.* ¶ 59; and filed a motion for default judgment against Champakbhai Patel in Ohio on March 30, 2017. Plaintiffs do not specifically allege that defendants filed any claims or lawsuits against C. Patel Co., Turkey Foot Lake Road Land Holdings, or Jashvanti Patel. The TPG defendants explain, however, that Champakbhai Patel and Jashvanti Patel are defendants in the June 23 lawsuit filed against Delaware Motel in Ohio; both Patels are defendants in the June 23 lawsuit filed against Independence Management in Ohio; and Turkey Foot Lake Road Land Holdings are co-defendants with both Patels in another lawsuit filed in Ohio on June 23, 2016.

With respect to the role of Wolin & Rosen, plaintiffs allege generally that attorneys at the law firm were among those who knowingly prepared, disseminated, and enforced NRB's fraudulently inflated loans and modifications. Plaintiffs also allege that certain unspecified attorneys "conceal[ed] and secret[ed] their knowledge of the false appraisals and inflated principal amounts." *Id.* ¶ 84. According to plaintiffs, concealing the existence of the fraud scheme was an "important part of the enterprise" in general.

6

*Id.* ¶ 34. Plaintiffs assert that members of the enterprise "worked together to conceal" the fact that many of NRB's hotel and motel loans were based on false appraisals. Plaintiffs also allege that the SBT and TPG defendants agreed to keep track of extra costs that could not "be carried on the books," such as extra compensation paid to Daddono for false appraisals and to the attorneys for preparation of fraudulent loan documents. *Id.* ¶ 75.

After plaintiffs filed this suit in Illinois state court, defendants removed the case to this Court under 28 U.S.C. § 1441(a).

## Discussion

When ruling on a motion to dismiss, a court accepts the truth of the complaint's factual allegations and draws all permissible inferences in the plaintiffs' favor. *Sabrina Roppo v. Travelers Commercial Ins. Co.*, __ F.3d __, 2017 WL 3695205, at *14 (7th Cir. Aug. 28, 2017). To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). Federal Rule of Civil Procedure 9(b) holds parties to a higher pleading standard when alleging fraud. Where a claim is based on allegations of fraud or mistake, "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). In other words, to state a claim based on allegations of fraud, a complaint "must provide the who, what, when, where, and how," of the fraudulent conduct. *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007) (internal quotation marks omitted).

7

**A.    RICO claims**

To state a RICO claim under section 1962(c), a plaintiff must allege the following elements: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 727 (7th Cir. 1998). A boilerplate recitation of the elements is not enough; a RICO plaintiff "must allege sufficient facts to support each element." *Id.* The SBT and TPG defendants contend that plaintiffs have failed to allege any of the necessary elements; Wolin & Rosen primarily emphasize plaintiffs' purported failure to allege that the law firm conducted the enterprise's affairs or engaged in racketeering activity. There may well be multiple bases for dismissing plaintiffs' RICO claims, but because failure to allege any of the above elements would require dismissal, the Court need not address every element.

**1.    Enterprise**

To satisfy the RICO enterprise element, a plaintiff must allege, at a minimum, "a group of persons acting together for a common purpose or course of conduct." *Rao v. BP Prod. N. Am., Inc.*, 589 F.3d 389, 400 (7th Cir. 2009). Apart from a general assertion that defendants "worked together to conceal" the fraud, Am. Compl. ¶ 34, plaintiffs' complaint does not include any allegations that defendants worked together to advance a common goal, let alone any facts to support such allegations. In their response to defendants' motions, plaintiffs contend that defendants shared the common illegal goal of subverting and manipulating the FDIC bid process to ensure that the TPG and SBT defendants took control of the purportedly fraudulent loans. The complaint, however, contains no such allegation. Plaintiffs' new contentions about manipulation of the bid process do not fix their pleading defect. But even if the Court were to consider

8

plaintiffs' new allegations, the complaint does not describe how defendants "acted together" to manipulate the bid process to advance that alleged common purpose. Even, for example, if the Court understood plaintiffs to be alleging that the TPG and SBT defendants knew about NRB's fraudulent scheme and knowingly concealed the scheme from the FDIC in order to acquire the loans, those allegations would tend to show only that the TPG and SBT defendants engaged in illegal activity to benefit themselves. Plaintiffs still would not have alleged actions "undertaken on behalf of the *enterprise* as opposed to on behalf of [defendants] in their individual capacities, to advance their individual self-interests." *United Food & Commercial Workers Unions & Employers Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849, 854 (7th Cir. 2013) (emphasis in original).

Though it might appear that NRB and Wolin & Rosen were part of an enterprise because they are alleged to have "acted together" to create fraudulent loan documents, plaintiffs have not alleged that Wolin & Rosen shared a common purpose with NRB or its executives. And even if Wolin & Rosen attorneys knew of NRB's fraudulent scheme and therefore knowingly participated in a fraudulent enterprise, plaintiffs have not alleged that Wolin & Rosen "operated or managed" the enterprise as required to satisfy RICO's "conduct" element. *See Goren*, 156 F.3d at 728 ("[S]imply performing services for an enterprise, even with knowledge of the enterprise's illicit nature, is not enough to subject an individual to RICO liability under § 1962(c); instead, the individual must have participated in the operation and management of the enterprise itself."); *see also Nesbitt v. Regas*, No. 13 C 8245, 2015 WL 1331291, at *10 (N.D. Ill. Mar. 20, 2015) (dismissing RICO claim against law firm who allegedly prepared fraudulent loan transaction

documents where "any law firm . . . could have performed [that] legal work . . . particularly given the fact that it was not essential . . . that the law firm defendants knew of the insider loan scheme").

    **2.**    **Racketeering activity**

Plaintiffs have also failed to adequately allege that defendants engaged in racketeering activity. The RICO statute lists the criminal acts that can serve as predicates for a RICO claim. *See* 18 U.S.C. § 1961(1). Plaintiffs assert that defendants have committed RICO predicate acts of mail and wire fraud, bank fraud, extortion, and money laundering. But plaintiffs have not alleged their fraud claims with the particularity required by Rule 9(b), and the extortion and money laundering claims fail for other reasons.

    **a.**    **Mail and wire fraud**

To meet the heightened pleading standard of Rule 9(b), "a RICO plaintiff [alleging predicate acts of fraud] must, at a minimum, describe the predicate acts of fraud with some specificity and state the time, place, and content of the alleged communications perpetrating the fraud." *Goren,* 156 F.3d at 726 (internal quotation marks and emendations omitted). The allegations of fraud in plaintiffs' complaint do not meet this requirement. Plaintiffs allege generally that the SBT and TPG defendants continued to issue and enforce commercial real estate loans that were fraudulent because they were based on Daddono's and Advanced Appraisal's inflated appraisals. Yet, in their complaint, plaintiffs do not identify a single fraudulent loan, let alone the fraudulent aspects of the loan transactions or when they took place. Nor do plaintiffs allege the content of any false appraisal on which a fraudulent loan was allegedly based—that is,

plaintiffs do not identify an appraised value of a particular property that is higher than its purported market value. And although plaintiffs do allege specific communications from the SBT defendants and TPG defendants in the form of "fraudulent claims" and "fraudulent collection lawsuits," plaintiffs do not describe the content of any of those communications. In any event, even if plaintiffs did provide more detail about those filings, "[a] number of courts have considered whether serving litigation documents by mail can constitute mail fraud, and all have rejected that possibility." *United States v. Pendergraft*, 297 F.3d 1198, 1208 (11th Cir. 2002) (collecting cases).

With respect to Wolin & Rosen, plaintiffs allege only that unspecified "attorneys," "including attorneys at Wolin & Rosen," among other law firms, knowingly prepared, disseminated, and enforced "fraudulently inflated loans and modifications," Am. Compl. ¶ 15, and "concealed and secreted" their knowledge of the false appraisals, *id.* ¶ 84. Plaintiffs do not specify the date on which any of the loan documents were prepared or which law firms prepared which loan documents; nor do they allege that Wolin & Rosen prepared any of the loan documents that allegedly resulted in any of the individual plaintiffs' injuries. The allegations lack the specificity Rule 9(b) requires.

Plaintiffs argue that they should be held to a less stringent pleading standard because of the duration and complexity of the alleged scheme. They also assert that "defendants have concealed the appraisals and prevented discovery of details surrounding the RICO claims." Pls.' Resp. to TPG Defs.' Mot. to Dismiss at 3; Pls.' Resp. to SBT's Mot. to Dismiss at 3. Plaintiffs are correct that the degree of specificity required by Rule 9(b) "may vary on the facts of a given case," and that a flexible application of the rule may be appropriate in cases of "information asymmetries." *Pirelli*

11

*Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 442, 446 (7th Cir. 2011). But if plaintiffs do not allege "'the specific date, place, or time of the fraudulent acts,' they still must 'use some alternative means of injecting precision and some measure of substantiation into their allegations of fraud.'" *Id.* (quoting 2 James Wm. Moore, *Moore's Federal Practice* § 9.03[1][b], at 9–18 (3d ed.2010)). Plaintiffs describe the alleged scheme only in general terms throughout the complaint and do not point to any alternative means they claim to have used to add precision or substantiation to their allegations.

With respect to plaintiffs' assertion that they have been unable to discover details of the scheme because defendants have concealed important information, including the content of the alleged appraisals, plaintiffs appear to acknowledge that their allegations are based on "information and belief." *See also, e.g.*, Pls.' Resp. to Wolin & Rosen's Mot. to Dismiss at 6 ("All we know at this juncture, without any discovery, is that the discount [the SBT and TPG defendants received on the loans they purchased] was probably so steep that State Bank of Texas and TPG could be considered as having received one of the "fruits" of the illegal scheme simply by purchasing the accounts from the FDIC."). Plaintiffs alleging fraud "on information and belief" do "not have unlimited leeway to do so." *Pirelli*, 631 F.3d at 442. Rather, those plaintiffs must provide "some firsthand information to provide grounds to corroborate [their] suspicions," *id.*; in other words they must, as a minimum, explain the basis for their belief. Plaintiffs offer no such information in this case. They do allude to "details of [an] investigation by the FDIC, Federal Reserve and U.S. Treasury Department" that "emerged in October 2016." Am. Compl. ¶ 16. But they do not explain what details emerged from that

investigation or how they came to suspect, for example, that the SBT and TPG defendants were aware of the alleged NRB scheme. As the TPG defendants point out, plaintiffs have not offered a plausible explanation for why NRB or its executives would have informed complete strangers (the SBT and TPG defendants) about their allegedly fraudulent scheme before the bank failed or why the SBT and TPG defendants would be interested in purchasing loans that they knew to be tainted by fraud. *See Escamilla v. City of Chicago*, 575 F. App'x 688, 689 (7th Cir. 2014) ("To state a claim for relief—even under the liberal system of notice pleading . . . a complaint must contain enough details about the subject-matter of the case to present a story that holds together.") (internal citations and quotation marks omitted).

Plaintiffs attempt to remedy the defects in their complaint by quoting the more detailed allegations they included in their original state-court complaint. They contend that *Fleischmann Distilling Corp. v Distillers Co.*, 395 F. Supp. 221 (S.D.N.Y. 1975), supports the proposition that a court should consider a plaintiff's "prior allegations" even when they have not been expressly incorporated into the complaint that is subject to a motion to dismiss. The court in *Fleischmann*, however, stated only that a court could consider allegations made earlier *in the same complaint* when assessing the viability of a particular count of a complaint, even if the plaintiffs did not expressly incorporate those allegations in the section of the complaint addressing that count. *Id.* at 228. The Court will consider only the amended complaint that has been filed in this case. There is good reason for this. Wolin & Rosen, for example, contend that plaintiffs eliminated allegations from their prior complaint regarding the timing of the loans at issue in order to avoid dismissal under the applicable statute of repose. It would be unfair to allow

13

plaintiffs evade a statute-of-repose dismissal by removing dates from their complaint while allowing them to use those same alleged dates to satisfy their Rule 9(b) obligations.

Even if the Court were to consider the more detailed allegations from the original complaint, plaintiffs would not satisfy the requirements of Rule 9(b). Although those allegations reference specific properties and specific loan documents executed on specific dates, the allegations do not describe the content of any of the allegedly false appraisals or identify any of the defendants whose motions are at issue here.

### b. Bank fraud

Plaintiffs' bank fraud claims are also subject to Rule 9(b) and fail for the same reason as their mail and wire fraud claims. In addition, the Court notes that plaintiffs have failed to identify any victim of the bank fraud that is a "financial institution" within the meaning of 18 U.S.C. § 1344. In their responses to defendants' motions, plaintiffs curiously assert that NRB was the financial institution defrauded by defendants. This assertion is not supported by the allegations in the complaint. It is also arguably inconsistent with plaintiffs' contention that defendants were part of the same criminal enterprise as NRB (or at least the apparent inconsistency has not been explained).

### c. Extortion

Plaintiffs contend that defendants committed predicate acts of extortion by filing fraudulent "claims" and "collection lawsuits." Although the Seventh Circuit has not addressed the issue, it is well established in other circuits that filing a lawsuit or threatening to file a lawsuit does not constitute criminal extortion. *See Deck v. Engineered Laminates*, 349 F.3d 1253, 1258 (10th Cir. 2003) ("[W]e join a multitude of

other courts in holding that meritless litigation is not extortion under [18 U.S. C.] § 1951."); *see also Vemco, Inc. v. Camardella*, 23 F.3d 129, 134 (6th Cir. 1994) ("A threat of litigation if a party fails to fulfill even a fraudulent contract . . . does not constitute extortion."). Plaintiffs contend that defendants went beyond filing fraudulent lawsuits and actually fabricated evidence. They do not, however, point to any support for this assertion in their complaint.

### d. Money laundering

The federal money laundering statute prohibits "knowingly engag[ing] or attempt[ing] to engage in a monetary transaction in criminally derived property of a value greater than $10,000." 18 U.S.C. § 1957(a). As discussed above, plaintiffs have failed to adequately allege that defendants engaged in criminal activity. They have therefore also failed to allege that defendants knowingly engaged in a monetary transaction in "criminally derived property." Thus plaintiffs' references to predicate acts involving money laundering fail as well.

### 3. RICO conspiracy and receipt of income

In addition to the RICO claims plaintiffs have asserted under section 1962(c), plaintiffs allege that defendants conspired to conduct a RICO enterprise in violation of section 1962(d) and received and invested income derived from a pattern of racketeering activity in violation of section 1962(a). "A § 1962(a) violation . . . requires the receipt of income from a pattern of racketeering activity, and the use of that income in the operation of an enterprise." *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 778 (7th Cir. 1994) (internal quotation marks omitted). Because, as discussed above, plaintiffs have failed to allege a pattern of racketeering activity or the operation of

15

an enterprise, they have failed to state a claim under section 1962(a). Similarly, failure to establish a violation of section 1962(c) means plaintiffs' claims for conspiracy to violate section 1962(c) "based on the same facts" also fail. *See Stachon v. United Consumers Club, Inc.*, 229 F.3d 673, 677 (7th Cir. 2000).

**B.     ICFA, fraud, and aiding and abetting fraud**

Like plaintiffs' RICO fraud claims, their claims for violation of the ICFA, common-law fraud, and common-law aiding and abetting fraud all rely on allegations of fraud and are subject to Rule 9(b). Plaintiffs' failure to allege fraud with particularity thus requires dismissal of these state-law fraud claims as well.

**C.     Tortious interference claims**

The torts of intentional interference with a contract and intentional interference with prospective economic advantage require allegations that a defendant took intentional action to interfere with a relationship or potential relationship the plaintiff had with a third party. To state a cause of action for tortious interference with a contract, a plaintiff must allege: "(1) the existence of a valid and enforceable contract between the plaintiff and a third party, (2) that defendant was aware of the contract, (3) that defendant intentionally and unjustifiedly induced a breach of the contract, (4) that the wrongful conduct of defendant caused a subsequent breach of the contract by the third party, and (5) that plaintiff was damaged as a result." *Poulos v. Lutheran Soc. Servs. of Illinois, Inc.*, 312 Ill. App. 3d 731, 742, 728 N.E.2d 547, 557 (2000). Plaintiffs do not allege the existence of a contract between themselves and any specific third party or a breach of a contract by a third party, let alone a breach intentionally induced by defendants. Plaintiffs respond that defendants interfered with the contracts of the Patel

16

Family Trust. In their complaint, however, plaintiffs allege only that TPG Capital and Capital Crossing filed a motion for default judgment against the Patel Family Trust. They do not allege that the Patel Family Trust had a valid contract with any of the plaintiffs, that the trust breached such a contract, or that any of the defendants knew about the contract and intentionally induced the Patel Family Trust to breach it. Plaintiffs have failed to state a claim for tortious interference with a contract.

Intentional interference with prospective economic advantage is a similar tort that covers instances of interference that take place before a plaintiff has entered into a contractual relationship with a third party. A plaintiff claiming intentional interference with prospective economic advantage must allege that "(1) he had a reasonable expectancy of a valid business relationship; (2) the defendant knew about the expectancy; (3) the defendant intentionally interfered with the expectancy and prevented it from ripening into a valid business relationship; and (4) the intentional interference injured the plaintiff." *Boffa Surgical Grp. LLC v. Managed Healthcare Assocs. Ltd.*, 2015 IL App (1st) 142984, ¶ 28, 47 N.E.3d 569, 577. Plaintiffs do not allege that any defendant knew about any plaintiff's reasonable expectancy of a valid business relationship or that any defendant intentionally interfered with such an expectancy. Though defendants point to this pleading deficiency in their motions to dismiss, plaintiffs fail to offer any response. Thus plaintiffs have also failed to state a claim for tortious interference with prospective economic advantage.

**D.  Unjust enrichment and quantum meruit**

Plaintiffs' claims for unjust enrichment and quantum meruit are based on their allegations of fraud. Indeed, in response to defendants' argument that the unjust

17

enrichment and quantum meruit claims must be dismissed because the parties' relationship is governed by an express contract, plaintiffs respond that defendants' fraud will "vitiate" those contracts. Because the claims depend on allegations of fraud, they must be dismissed for failure to comply with Rule 9(b). In addition, plaintiffs fail to allege that any of the plaintiffs "conferred a benefit upon [any of ] the defendant[s] which the defendant[s] ha[ve] unjustly retained," *City of Elgin v. Arch Ins. Co.*, 2015 IL App (2d) 150013, ¶ 28, 53 N.E.3d 31, 42, as they must to state a claim for unjust enrichment. Similarly, plaintiffs fail to allege that any of them "performed a service to benefit [one of] the defendant[s]," *Bernstein & Grazian, P.C. v. Grazian & Volpe, P.C.*, 402 Ill. App. 3d 961, 979, 931 N.E.2d 810, 826 (2010), as is necessary to state a claim for quantum meruit.

**E.    Personal jurisdiction over Bonderman and Coulter**

The TPG defendants contend that the Court lacks personal jurisdiction over Bonderman and Coulter because plaintiffs have not alleged that either defendant committed any tortious conduct within Illinois or aimed at Illinois. Plaintiffs make two responses. First, they assert, without any additional explanation, that "Bonderman and Coulter had sufficient minimum contacts with the forum state." Pls.' Resp. to TPG Defs.' Mot. to Dismiss at 20. This conclusory assertion is plainly inadequate to support jurisdiction. *See In re Testosterone Replacement Therapy Prod. Liab. Litig. Coordinated Pretrial Proceedings*, 136 F. Supp. 3d 968, 973 (N.D. Ill. 2015) (Kennelly, J.) (plaintiffs cannot rely on conclusory allegations to establish prima facie case of jurisdiction). Second, plaintiffs argue that the Court has jurisdiction over Bonderman and Coulter under RICO's nationwide-service-of-process provision. *See* 18 U.S.C. §

1965(b) (authorizing nationwide service of process in RICO cases where "it is shown that the ends of justice require that other parties residing in any other district be brought before the court"). The Court has determined above, however, that plaintiffs have failed to state viable RICO claims. Thus section 1965(b) does not support personal jurisdiction over Bonderman and Coulter. *See In re Honey Transshipping Litig.*, 87 F. Supp. 3d 855, 871 (N.D. Ill. 2015) (finding "no authority for the proposition that a plaintiff may serve a non-resident defendant pursuant to Section 1965(b), when the underlying RICO claims are invalid").

**Conclusion**

For the reasons stated above, the Court grants the motions by various defendants to dismiss plaintiff's amended complaint [dkt. nos. 51, 62, 65, 79].

Date: September 22, 2017

_____
MATTHEW F. KENNELLY
United States District Judge