**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| DELAWARE MOTEL ASSOCIATES, INC., INDEPENDENT MANAGEMENT ASSOCIATES, INC., TURKEY FOOT LAKE ROAD LAND HOLDINGS, LLC, C. PATEL CO. LLC, CHAMPAKBHAI N. PATEL, and JASHVANTI C. PATEL, | ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) ) | Case No. 17 C 1715 |
| CAPITAL CROSSING SERVICING COMPANY LLC, CAPITAL CROSSING HOLDINGS LLC, ADVANCED APPRAISAL GROUP, INC., ADVANCED APPRAISAL CONSULTANTS, INC., ADVANCED APPRAISAL CONSULTANTS, LLC, WILLIAM DADDONO, WOLIN & ROSEN, LTD., SMITHAMUNDSEN LLC, THE STATE BANK OF TEXAS, CHANDRAKANT PATEL, HIREN PATEL, EDWARD FITZGERALD, PHOENIX NPL, LLC, PHOENIX REO, LLC, TARRANT CAPITAL ADVISORS, INC., TPG GLOBAL, LLC, TPG CAPITAL L.P., TPG GROUP HOLDINGS (SBS) ADVISORS, INC., TPG SPECIALITY LENDING, INC., TPG OPPORTUNITIES PARTNERS, L.P., NICHOLAS LAZARES, RICHARD WAYNE, DAVID BONDERMAN, and JAMES G. COULTER, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Plaintiffs Delaware Motel Associates, Inc., Independence Management

Associates, Inc., C. Patel Co. LLC, Turkey Foot Lake Road Land Holdings, LLC,

Champbakbhai Patel, and Jashvanti Patel allege that they were victims of a fraudulent

loan scheme.  Plaintiffs say they entered into loan agreements in order to acquire

certain hotel and motel properties.  Those agreements were fraudulent, they allege,

because they were based on false and inflated appraisals of the property values, which

resulted in inflated principal amounts for the loans.  According to plaintiffs, the National

Republic Bank of Chicago (NRB) generated the fraudulent loans as part of a criminal

racketeering enterprise.  Plaintiffs allege that William Daddono knowingly provided false

and inflated appraisals of commercial real estate properties, and NRB used the inflated

proposals to issue loans with inflated principal amounts.  NRB eventually failed in 2014,

at which point other entities purchased the allegedly fraudulent loans.  According to

plaintiffs, the acquiring entities knew that the loans they purchased were based on false

and inflated appraisals but continued to enforce them anyway.

Plaintiffs assert that a number of participants in the alleged loan scheme are

operating an illegal racketeering enterprise.  They have sued Daddono and his

appraisal companies, Advanced Appraisal Group, Inc., Advanced Appraisal

Consultants, Inc. and Advanced Appraisal Consultants, LLC (collectively, the Advanced

Appraisal entities); the former director and president of NRB, Edward Fitzgerald, and

the bank's former chief executive officer and chairman of the board, Hiren Patel; the law

firms whose attorneys allegedly prepared the fraudulent loan documents, Wolin &

Rosen and SmithAmundsen LLC; as well as the entities who were allegedly involved in

acquiring and enforcing the loans after NRB's failure, the State Bank of Texas (SBT);

TPG Capital, L.P., TPG Global, LLC, TPG Group Holdings (SDS) Advisors, Inc., TPG

Opportunities Partners, TPG Specialty Lending, Inc., TPG Opportunities Partners, L.P.

(collectively, the TPG defendants); Capital Crossing Servicing Company, LLC, Capital

Crossing Holdings LLC, Phoenix Asset Optimization LLC, Phoenix Asset Management, LLC, Phoenix, NPL, LLC, Phoenix REO, LLC, and Tarrant Capital Advisors, Inc. (collectively, the Capital Crossing defendants). In addition to those entities, plaintiffs have sued David Bonderman and James Coulter, the alleged operators of TPG Capital, L.P.; Chandrakant Patel, SBT's chief executive officer; and Nicholas Lazares and Richard Wayne, the alleged former managing directors of Lehman Brothers Holdings Inc.

In plaintiffs' first amended complaint, they asserted claims against all defendants under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962(a), (c), (d), alleging predicate acts of racketeering including mail and wire fraud, bank fraud, extortion, and money laundering. Plaintiffs also asserted various claims under Illinois law based on their allegations of fraud. After limited discovery revealed that plaintiffs had misidentified the role that Lazares and Wayne played in the alleged scheme and could not otherwise support the claims asserted against them, the Court granted Lazares and Wayne's motion for summary judgment on all counts. *See Delaware Motel Assocs. v. Capital Crossing Servicing Co.* (Summary Judgment Ruling), No. 17 C 1715, 2017 WL 4512709, at *1 (N.D. Ill. Oct. 10, 2017). Prior to granting that motion, the Court also granted a motion to dismiss the claims asserted against all defendants except for Hiren Patel, Fitzgerald, SmithAmundsen, Daddono, and the Advanced Appraisal entities.[1] *See Delaware Motel Assocs. v. Capital Crossing*

---

[1] Hiren Patel filed a motion to dismiss the first amended complaint, but only after the other motions to dismiss were fully briefed, and the Court has yet to rule on that motion. SmithAmundsen did not appear in the case until after the Court granted the other motions to dismiss. Fitzgerald has still not entered an appearance. Daddono is currently incarcerated, and the Court has temporarily excused him and the Advanced Appraisal entities from their obligation to respond to plaintiff's complaint.

*Servicing Co.* (MTD Ruling), No. 17 C 1715, 2017 WL 4224618, at *1 (N.D. Ill. Sept. 22, 2017). In its ruling, the Court concluded that plaintiffs failed to allege that defendants were operating a RICO enterprise or that they had engaged in the predicate racketeering activity. The Court also determined that plaintiffs failed to plead their state-law claims with the requisite particularity and provided no basis for the Court to exercise personal jurisdiction over Bonderman and Coulter. For purposes of this opinion, the Court assumes familiarity with the alleged background facts recited in those prior rulings.

Plaintiffs now seek leave to amend their complaint again. In the proposed complaint, plaintiffs no longer allege that defendants were engaged in the RICO predicate acts of extortion or money laundering. Instead, they assert that certain defendants violated RICO by defrauding financial institutions—namely, Lehman Brothers Bank and its parent Lehman Brothers Holdings Inc.—and collecting unlawful debt. In addition, though plaintiffs have dropped their claims for tortious interference, the proposed complaint includes a new claim for violation of the Illinois Uniform Fraudulent Transfer Act (IUFTA), 740 ILCS 160/5, and plaintiffs continue to assert claims under Illinois law for fraud, violation of the Illinois Consumer Fraud and Deceptive Practices Act (ICFA), 815 ILCS 505/2, unjust enrichment, and quantum meruit. The proposed complaint contains slightly more detail about certain loans and properties pertaining to the alleged loan scheme, but the allegations regarding the fraudulent lending aspect of the alleged scheme are largely the same as those included in the first amended complaint. The proposed complaint also contains new allegations concerning an aspect of the scheme that plaintiffs say they only recently discovered.

According to those new allegations, Lazares and Wayne helped their former employees

to steal assets from Lehman Brothers and use the stolen assets to create and fund

certain of the Capital Crossing entities.

The Capital Crossing and TPG defendants, Wolin & Rosen, SmithAmundsen,

and Hiren Patel have filed responses opposing plaintiffs' motion for leave to file another

amended complaint. They contend that the proposed complaint fails to cure the

pleading defects identified in the Court's prior rulings and that the newly asserted claims

are legally untenable. Thus the proposed complaint would not survive a motion dismiss,

they argue, and amendment would be futile. For the reasons stated below, the Court

agrees that amendment would be futile and denies plaintiff's motion for leave to file an

amended complaint with respect to claims asserted against the Capital Crossing and

TPG defendants, the SBT defendants, Wolin & Rosen, SmithAmundsen, and Lazares

and Wayne. In addition, for reasons discussed below, the Court is also skeptical that

the proposed complaint would survive motions to dismiss by Hiren Patel, Fitzgerald,

Daddono, and the Advanced Appraisal defendants. But plaintiffs have not had the

opportunity to respond to arguments supporting dismissal of claims against those

defendants. The Court therefore orders plaintiffs to show cause why the claims in the

proposed complaint asserted against Hiren Patel, Fitzgerald, Daddono, and the

Advanced Appraisal defendants could withstand a motion under Federal Rule of Civil

Procedure 12(b)(6).

### Discussion

Plaintiffs wish to file a second amended complaint. Federal Rule of Civil

Procedure 15(a) allows a party to amend its pleading once as a matter of course but

prohibits subsequent amendments unless the party obtains the consent of the opposing party or the court's leave.  A "court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).  "Nevertheless, a district court should deny a motion for leave to amend if the proposed amendment is futile, as when, for example, the amended pleading would not survive a motion to dismiss." *Weston v. Illinois Dep't of Human Servs.*, 433 F. App'x 480, 482 (7th Cir. 2011).  Other examples of futile amendments include those that "restat[e] the same facts using different language, reassert[] claims previously determined, or fail[] to state a valid theory of liability." *Garcia v. City of Chicago, Ill.*, 24 F.3d 966, 970 (7th Cir. 1994) (internal citations omitted).  To determine whether a proposed amended complaint would survive a motion to dismiss, a court assumes the truth of all well-pleaded allegations in the proposed complaint and draws all reasonable inferences in plaintiffs' favor.  *See St. John v. Cach, LLC*, 822 F.3d 388, 389 (7th Cir. 2016).

In the proposed complaint, each of the claims plaintiffs assert under federal law is based on an alleged violation of the RICO Act.  That Act makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."  18 U.S.C. § 1962(c).  To state a claim for a violation of section 1962(c), therefore, a plaintiff ordinarily must allege four elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 727 (7th Cir. 1998).  A plaintiff alleging collection of unlawful debt, however, need not otherwise allege a pattern of racketeering

activity.  *See H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 232 (1989).

All of the claims in the proposed complaint, including those asserted under state law, are based on allegations of fraud.  When alleging fraud, a party must state the circumstances constituting the fraud with particularity.  Fed. R. Civ. P. 9(b).  That is, the complaint "must provide the who, what, when, where, and how" of the alleged fraud.  *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007) (internal quotation marks omitted).  The level of detail required may vary based on a case's facts, but a plaintiff who lacks certain specific details must at least "use some alternative means of injecting precision and some measure of substantiation into their allegations of fraud."  *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 442 (7th Cir. 2011) (quoting 2 James Wm. Moore, *Moore's Federal Practice* § 9.03[1][b], at 9–18 (3d ed. 2010)).  In addition, where a plaintiff's allegations of fraud are based on information and belief, the plaintiff must provide the basis for his suspicions, and the basis provided "must make the allegations *plausible*."  *Id.* at 443 (emphasis in original).

## A.      Wolin & Rosen and SmithAmundsen

In the proposed amended complaint, plaintiffs assert four claims against Wolin & Rosen and SmithAmundsen:  a substantive RICO claim for collection of unlawful debts and a RICO conspiracy claim for aiding and abetting a conspiracy to collect unlawful debts, as well as state-law claims for unjust enrichment and quantum meruit.  The RICO Act defines "unlawful debt" as debt related to illegal gambling activity or debt "which is unenforceable under State or Federal law in whole or in part as to principal or interest because of the laws relating to usury" and "which was incurred in connection with . . .

the business of lending money or a thing of value at a rate usurious under State or Federal law, where the usurious rate is at least twice the enforceable rate." 18 U.S.C. § 1961(6). In the proposed complaint, plaintiffs do not list the interest rates charged for any of the loans at issue in this case; nor do they allege that any of those rates exceeded the applicable usury rate. Rather, plaintiffs argue that the loans' principal amounts were so inflated by the allegedly fraudulent appraisals that the effective interest rates on the loans are excessive. According to plaintiffs, when one considers the purportedly correct principal amount—i.e., the amount plaintiffs say would have been supported by a proper appraisal—the charged interest rates on the loan exceed one thousand percent.

Setting aside the question of whether a mortgage loan containing an allegedly inflated principal amount could constitute an "unlawful debt" under the RICO Act, the Court concludes that the proposed complaint fails to state a RICO claim against Wolin & Rosen and SmithAmundsen for the same reason the first amended complaint failed to do so. Namely, plaintiffs do not adequately allege that the law firms conducted the affairs of an enterprise or agreed to do so. Plaintiffs allege generally that attorneys at Wolin & Rosen and SmithAmundsen prepared loan documents containing inflated principal amounts for NRB. But "simply performing services for an enterprise, even with knowledge of the enterprise's illicit nature, is not enough to subject an individual to RICO liability under § 1962(c); instead, the individual must have participated in the operation and management of the enterprise itself." *Goren*, 165 F.3d at 728. Plaintiffs do not plausibly allege that either law firm "exercised (or agreed to exercise . . . ) at least some measure of control over" the other participants in the alleged scheme.

*Bachman v. Bear, Stearns & Co.*, 178 F.3d 930, 932 (7th Cir. 1999). Rather, the allegations support the conclusion that the attorneys at those firms were merely "hirelings" of the alleged enterprise. *Id.*; *see also Saleh v. Muskegan Hotels LLC*, No. 14-CV-09186, 2018 WL 287748, at *8 (N.D. Ill. Jan. 4, 2018) (concluding, in lawsuit parallel to this one, that Wolin & Rosen's and SmithAmundsen's alleged preparation of loan documents with knowledge that loans were based on false appraisals did not show that firms "were anything more than hirelings").[2]

Plaintiffs assert in conclusory fashion that one of the attorneys for Wolin & Rosen "operated and managed the enterprise in a significant manner by deciding the final inflated loan amounts" with Fitzgerald. 2d Am. Compl. ¶ 171. But plaintiffs do not provide the basis for this suspicion or otherwise explain why this allegation is plausible. *Pirelli*, 631 F.3d at 443. Indeed, other allegations in the complaint undermine the plausibility of plaintiff's assertion that an attorney decided the final amount of a loan. Elsewhere in the complaint, for example, plaintiffs allege that it was Hiren Patel and Fitzgerald who selected the targeted loan amounts and asked Daddono to issue appraisals to support those amounts. But more importantly, the thrust of plaintiffs' allegations is that defendants used Daddono's inflated appraisals to induce plaintiffs and others to accept inflated loans. To allow an attorney to decide on a final loan amount different from the one supported by Daddono's appraisal would seem to undermine the effectiveness of the scheme. In order to state a claim for relief, a complaint must "present a story that holds together." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th

---

[2] It is unclear from the proposed complaint whether plaintiffs also allege that attorneys from Wolin & Rosen and SmithAmundsen represented the defendants in litigation proceedings (or in anticipation of litigation proceedings) against plaintiffs. To the extent plaintiffs do make such an allegation, that alleged conduct is also mere performance of professional services and does not constitute operation of an enterprise.

Cir. 2010).  The most that plaintiffs have plausibly alleged is that the law firms and certain of the other defendants "had a commercial relationship, not that they had joined together to create a distinct entity for [illicit] purposes."  *United Food & Commercial Workers Unions & Employers Midwest Health Benefits Fund v. Walgreen Co.* (*Walgreen*), 719 F.3d 849, 855 (7th Cir. 2013).  Plaintiffs have therefore failed to state a claim against those defendants under section 1962(c).  Because they "equally fail[] to allege that [Wolin & Rosen and SmithAmundsen] *agreed* to act on behalf of the enterprise," plaintiffs have not stated a claim against those defendants under section 1962(d).  *Id.* at 856 (emphasis in original).

With respect to the claims asserted under state law, plaintiffs have failed to plead the necessary elements.  Plaintiffs do not allege that they "conferred a benefit upon [the law firms] which the [firms] ha[ve] unjustly retained," and thus they cannot state a claim for unjust enrichment.  *City of Elgin v. Arch Ins. Co.*, 2015 IL App (2d) 150013, ¶ 28, 53 N.E.3d 31, 42.  Plaintiffs contend that the legal fees the firms received were funded in part by plaintiffs' debt service payments and constitute a conferred benefit.  But even if a portion of plaintiffs' debt service payments were used to pay legal fees, plaintiffs do not allege or argue that the law firms were not entitled to receive fees for the legal services they provided.  Nor do plaintiffs allege that they "performed a service to benefit the [firms]," and thus they cannot state a claim for quantum meruit.  *Bernstein & Grazian, P.C. v. Grazian & Volpe, P.C.*, 402 Ill. App. 3d 961, 979, 931 N.E.2d 810, 826 (2010).  For the same reasons the Court identified in its prior ruling with respect to claims against Wolin & Rosen, the proposed claims asserted against Wolin & Rosen and Smith Amundson would not survive a motion to dismiss.

In addition, to the extent plaintiffs' state-law claims against the law firm are based on their alleged preparation of loan documents, those claims are barred by the applicable statute of repose.  In Illinois, an action for damages against an attorney arising out of an act or omission in the performance of professional services "may not be commenced in any event more than 6 years after the date on which the act or omission occurred."  735 ILCS 5/13-214.3(c).  Plaintiffs do not allege that they were induced to enter into a loan agreement subsequent to 2008.  But plaintiffs filed this action in 2017, more than six years after any alleged act or omission on the part of Wolin & Rosen or SmithAmundsen.  Plaintiffs argue that the statute of repose was tolled because the law firms fraudulent concealed their misconduct.  But plaintiffs provide no factual allegations to support their assertion of fraudulent concealment.  In response to SmithAmundsen's motion, plaintiffs point to SmithAmundsen's failure to produce documents in another lawsuit as evidence that the law firm fraudulently concealed its allege misconduct.  But plaintiffs provide no support for the notion that SmithAmundsen had an obligation to produce the documents at issue or that its failure to produce the documents was fraudulent.  Indeed, it appears from the docket in that case that the court denied plaintiffs' motion for discovery of the documents in question.  *See Saleh v. Merchant*, Case No. 14 C 9186, dkt. no. 50 (N.D. Ill.).  Plaintiffs' claims against the law firms based on their alleged conduct prior to 2011 would thus be barred by Illinois' statute of repose.

**B.    The Capital Crossing, TPG, and SBT entities and individuals**

In the proposed complaint, the same claims asserted against Wolin & Rosen and SmithAmundsen are, for the most part, also asserted against Capital Crossing, TPG,

SBT, and other defendants associated with those entities.[3]  Against the Capital

Crossing defendants, plaintiffs also propose to assert new claims based on the alleged

defrauding of Lehman Brothers:  a substantive RICO claim for fraud against a financial

institution, a RICO conspiracy claim for conspiracy to defraud a financial institution, and

a claim for violation of the IUFTA.  In addition to those claims, plaintiffs propose to

assert claims against Capital Crossing, TPG, and individuals and entities associated

with those defendants for investment of racketeering proceeds in violation of 18 U.S.C.

§ 1962(a), aiding and abetting a conspiracy to defraud a financial institution in violation

of 18 U.S.C. § 1962(d), common-law fraud, aiding and abetting fraud, and violation of

the ICFA.  Though the SBT defendants have not filed any opposition to plaintiffs' motion

for leave to amend, the Court concludes that the proposed claims asserted against

them would not survive a motion to dismiss for the same reasons that the proposed

claims against the Capital Crossing and TPG defendants would not survive such a

motion.

The Court first addresses those claims based on allegations that Lazares and

Wayne assisted in the stealing of assets from Lehman Brothers to create certain Capital

Crossing entities.  Plaintiffs previously pressed this theory in response to Lazares and

Wayne's motion for summary judgment.  In granting that motion, the Court noted the

oddity of plaintiffs' assertions that Lehman Brothers were victims of defendants' alleged

scheme considering that plaintiffs had previously named Lehman Brothers  as a

*defendant* in this case.  Summary Judgment Ruling, 2017 WL 4512709, at *3.  In

addition, though plaintiffs pointed to portions of deposition testimony from Lazares and

---

[3]     Plaintiffs do not propose to assert a RICO conspiracy claim against SBT or
Chandrakant Patel for aiding and abetting conspiracy to collect unlawful debts.

Wayne that purportedly demonstrated their involvement in an "asset stripping" scheme, the Court concluded that the cited testimony showed nothing of the sort. *Id.* The Court ultimately determined, therefore, that plaintiffs had failed to point to any evidence showing that Lazares and Wayne or their colleagues stole assets from Lehman Brothers. *Id.*

But the proposed claims based on the alleged defrauding of Lehman Brothers face a more fundamental problem, which the Court also noted in its ruling. According to plaintiffs' allegations, *Lehman Brothers* was the defrauded party. Plaintiffs do not explain how they would have standing to pursue a claim based on an injury to an unrelated financial institution. Plaintiffs appear to be asserting that the injury to Lehman Brothers resulted in an injury to them. *See* 2d Am. Compl. ¶ 65 ("There is a causal connection between defendants' predicate offenses of bank fraud and the racketeering enterprise because defendants' bank fraud conspiracy created Capital Crossing Servicing Company LLC."). Thus they appear to argue that they may assert a claim based on the alleged bank fraud because that fraud led to the creation of Capital Crossing Servicing, an entity that ultimately defrauded and injured plaintiffs through participation in the alleged loan scheme. This argument flies in the face of RICO's proximate cause requirement. *See Hemi Grp., LLC v. City of New York, N.Y.*, 559 U.S. 1, 9 (2010) ("Proximate cause for RICO purposes . . . requires some direct relation between the injury asserted and the injurious conduct alleged.") (internal quotation marks omitted). The alleged link between plaintiff's injury and the alleged bank fraud is "purely contingent" and "too remote" to satisfy RICO's proximate cause requirement. *Id.* This failure to plausibly allege proximate cause also prevents plaintiffs from stating a claim

for RICO conspiracy.  *See Sidney Hillman Health Ctr. of Rochester v. Abbott Labs.*, No. 13 C 5865, 2017 WL 5904656, at *2 (N.D. Ill. Feb. 6, 2017) (citing *Walgreen*, 719 F.3d at 856–57).  In sum, the RICO claims based upon the alleged defrauding of Lehman Brothers would not survive a motion to dismiss.

Plaintiffs also propose to assert a claim against the Capital Crossing defendants under the IUFTA.  Plaintiffs contend that their interest in recovering on claims against Capital Crossing in this lawsuit is at risk due to Lehman Brothers' pending bankruptcy proceedings.  A party cannot state a claim under the IUFTA, however, unless the debtor "owed or potentially owed [the debt to the creditor] at the time of the transfer."  *Sirazi v. Panda Exp., Inc.*, No. 08 C 2345, 2012 WL 1279964, at *1 (N.D. Ill. Apr. 14, 2012) (Kennelly, J.) (citing *Mandolini Co. v. Chicago Produce Suppliers, Inc.*, 184 Ill. App. 3d 578, 581, 540 N.E.2d 505, 507–08 (1989)). Plaintiffs filed this suit nearly ten years after the alleged fraudulent transfer of assets from Lehman Brothers.  They cannot plausibly allege that they were owed any debt resulting from their claims in this lawsuit at the time of the alleged transfer.  Thus the proposed claim under the IUFTA would not survive a motion to dismiss.

The remaining claims plaintiffs propose to assert against Capital Crossing, TPG, SBT, and the related defendants would not survive a motion to dismiss for the same reasons the Court stated in its prior ruling.  As the Court concluded with respect to the first amended complaint, plaintiffs fail to allege in the proposed complaint that Capital Crossing, TPG, SBT, or the related defendants engaged in actions "undertaken on behalf of the *enterprise* as opposed to on behalf of [defendants] in their individual capacities, to advance their individual self-interests."  *Walgreen*, 719 F.3d at 854

(emphasis in original); *see also* MTD Ruling, 2017 WL 4224618, at *3 (discussing failure to allege conduct on behalf of enterprise). Plaintiffs assert that the alleged enterprise had the following common goals, in addition to the alleged goal of stealing assets from Lehman Brothers: illegally acquiring confidential loan information from NRB, subverting and manipulating the Federal Deposit Insurance Corporation (FDIC) bid process to obtain NRB loans after the bank failed, and collecting unlawful debts from NRB loan customers. But plaintiffs fail to allege any facts tending to show that defendants acted *together* to achieve these alleged goals on behalf of the alleged enterprise. Plaintiffs do allege that SBT illegally obtained NRB loan information and shared that information with TPG on the condition that SBT would have first choice of the NRB loans it wanted during the FDIC bid process. But this allegation suggests only that SBT and TPG each entered into an arms-length agreement on behalf of *itself*—under the agreement, TPG would obtain information about the NRB loans in advance of its bid, and SBT would be ensured a bid position superior to TPG's. The alleged agreement does not show that the two entities were acting together to advance a common goal of the enterprise. Plaintiffs do not allege, for example, that the participation of both entities was necessary to achieve the enterprise's purported goal of acquiring NRB loans.

Plaintiffs allege in conclusory fashion that defendants worked together to conceal the alleged scheme and that SBT, TPG, and Capital Crossing agreed to keep track of "extra costs that [could not] be carried on the books." 2d Am. Compl. ¶ 135. But they do not allege any specific facts to show how defendants worked together to conceal the scheme, and nothing in the proposed complaint indicates who agreed with whom to keep track of the alleged "extra costs," when such an agreement was made, or why it

was necessary or helpful for the enterprise that those three defendants would track the alleged costs. The complaint simply does not contain enough details about the alleged agreement "to present a story that holds together." *Swanson*, 614 F.3d at 404; *see also Saleh*, 2018 WL 287748, at *7 (concluding that same allegations concerning alleged agreement by SBT, TPG, and Capital Crossing to track extra costs of scheme were not sufficient to plead a RICO enterprise). Because plaintiffs do not adequately allege that the defendants operated an enterprise, they also fail to state a claim against those defendants for using racketeering income to acquire an interest in or operate an enterprise, 18 U.S.C. § 1962(a), or for conspiring to operate an enterprise, 18 U.S.C. § 1962(d).

The proposed RICO claims against Capital Crossing, TPG, SBT, and the related defendants would not survive a motion to dismiss because plaintiffs do not allege that those defendants acted on behalf of a RICO enterprise. But all of the proposed claims against those defendants, including the claims asserted under state law, fail for another reason. Apart from the claims discussed above concerning Lehman Brothers, all of the claims plaintiffs propose to assert against the Capital Crossing, TPG, and SBT defendants are based on the notion that those defendants knew about the alleged appraisal and loan scheme but continued to enforce the allegedly fraudulent loans they acquired from NRB. In its prior ruling, the Court noted the implausibility of plaintiffs' allegations that those defendants knew about the alleged fraudulent nature of the NRB loans. *See* MTD Ruling, 2017 WL 4224618 ("[P]laintiffs have not offered a plausible explanation for why NRB or its executives would have informed complete strangers (the SBT and TPG defendants) about their allegedly fraudulent scheme before the bank

16

failed or why the SBT and TPG defendants would be interested in purchasing loans that they knew to be tainted by fraud.").  Nothing in the proposed complaint fixes that problem.  Plaintiffs allege generally that those defendants would have learned of the fraudulent nature of the NRB loans once they viewed the NRB loan files.  But plaintiffs do not point to anything in particular in the loan files that would have indicated to the Capital Crossing, TPG, or SBT defendants that they had acquired fraudulently inflated loans.

As discussed in more detail below, it is also not apparent that plaintiffs have alleged NRB's underlying fraud scheme with the particularity required by Rule 9(b).  The proposed complaint includes new details about the dates plaintiffs entered into certain loan agreements or received payment demands and the differences between the appraised values and true values of the properties at issue.  But plaintiffs do not provide information about any representations that were made about the appraisals' accuracy, the basis for their allegations about the properties' true values, or other grounds for their suspicions that the appraisals were fraudulent.  Plaintiffs do point, for example, to an expert's analysis of Daddono's appraisal reports.  But to the extent the report referenced in the proposed complaint is the same report plaintiffs attached to their first motion to amend their complaint, the report hardly provides adequate grounds for asserting that Daddono engaged in the fraudulent conduct plaintiffs have alleged.   The report addresses three properties not at issue in this litigation.  And though the author of the report criticizes Daddono's appraisal methodology and concludes that his appraisal reports are confusing and potentially misleading in certain ways, he does not indicate that the resulting appraisals were intentionally deceptive, fraudulent, or even inflated.

In its prior ruling, the Court determined that plaintiffs failed to allege that Bonderman and Coulter had sufficient contacts with Illinois to support personal jurisdiction in this case. MTD Ruling, 2017 WL 4224618, at *7. Plaintiffs' proposed complaint does not cure this problem either. And because the Court concludes that the proposed complaint would not state a RICO claim against defendants like Bonderman and Coulter, 18 U.S.C. § 1965(b) does not provide an independent basis for personal jurisdiction. *See id.* Thus, in addition to the fact that the proposed complaint would not survive a motion to dismiss from any of the Capital Crossing, TPG, and SBT defendants, the claims proposed against Bonderman and Coulter would also be dismissed for lack of personal jurisdiction.

**C.     Lazares and Wayne**

Plaintiffs appear to have dropped their claims against Lazares and Wayne that were premised on those defendants' alleged affiliation with Capital Crossing Servicing Company. Summary Judgment Ruling, 2017 WL 4512709 (discussing allegations that Lazares and Wayne managed Capital Crossing Servicing in light of Lazares and Wayne's insistence that they have never been involved or affiliated with that entity). But the claims plaintiffs do propose to assert against Lazares and Wayne are based on those defendants' alleged involvement in a scheme to steal assets from Lehman Brothers. The Court has explained, both in its summary judgment ruling and its discussion of the Lehman Brothers allegations above, that those allegations do not provide an adequate basis for any claims that plaintiffs might assert. None of the claims against Lazares and Wayne in the proposed complaint, therefore, would survive a motion to dismiss.

**D.    Hiren Patel, Fitzgerald, Daddono, and the Advanced Appraisal entities**

Plaintiffs allege that Hiren Patel, Fitzgerald, Daddono, and the Advanced Appraisal entities were directly involved in generating the fraudulent NRB loans that plaintiffs allege to be the source of their injuries in this case.  Against those defendants, plaintiffs propose to assert a RICO claim for conspiracy to collect unlawful debts, state-law claims for fraud under the common law and the ICFA, and claims for unjust enrichment and quantum meruit.  In his response to plaintiffs' motion for leave to amend, Hiren Patel contends that the allegations in the proposed complaint reflect only that he acted in his own interest and not that he conducted the affairs of a RICO enterprise.  He also maintains that plaintiffs' allegations of fraud, which provide the basis for all the claims against him, are not stated with the particularity Rule 9(b) requires.

Patel's arguments appear to have merit.  The Court has already explained that plaintiff's allegations do not support a conclusion that the relationships between NRB, where Patel was chief executive officer, and Wolin & Rosen, Smith Amundsen, and the Capital Crossing, TPG, and SBT defendants constituted an enterprise.  And another court in a parallel lawsuit has already concluded that the alleged relationship between NRB and Daddono (and his Advanced Appraisal companies) does not constitute a RICO enterprise.  *See Saleh*, 2018 WL 287748, at *6 ("Daddono was a mere hireling of NRB.  And the relationship between an entity and its hireling does not create an association-in-fact.").  With respect to the underlying allegations of fraud, Patel notes that only a handful of paragraphs in the proposed complaint refer to specific loans for properties acquired by the individual plaintiffs in this case.  *See* 2d Am. Compl. ¶¶ 153–64.  In those paragraphs, plaintiffs allege the dates listed on the loan documents, the

total amount of the loan, Daddono's alleged appraised value, and what they contend a "legitimate" appraised value would have been. But plaintiffs do not allege where or how the appraised value was communicated to them or the basis for their suspicions that Daddono's appraised values were fraudulent or inflated. As the Court discussed above, plaintiffs' reference to an expert's analysis of Daddono's appraisal reports provides little support for such a suspicion. *See Pirelli*, 631 F.3d at 443 ("The grounds for the plaintiff's suspicions must make the allegations [of fraud] *plausible.*") (emphasis in original).

Because the Court issued its prior ruling on the motion to dismiss before setting a briefing schedule on Patel's motion to dismiss, plaintiffs have not had the opportunity to respond to his arguments. Thus, although the Court has expressed its concern with the adequacy of plaintiffs' allegations against Patel, the Court will allow plaintiffs the opportunity to respond to his arguments and explain why they believe the proposed allegations are sufficient to state a claim against him. In addition, although Fitzgerald, Daddono, and the Advanced Appraisal entities have not entered an appearance in this case or moved to dismiss the claims against them, it appears that the same arguments for dismissing the claims against Patel would support dismissal of the claims against those defendants as well. In their responsive submission, therefore, plaintiffs should also address why their allegations against those defendants are sufficient to state a claim, especially in light of the concerns raised about the particularity of the fraud allegations and whether the alleged relationship among the defendants indicates that they were conducting the affairs of a RICO enterprise.

**Conclusion**

For the reasons stated above, the Court denies plaintiffs' motion for leave to file a second amended complaint [dkt. no. 140], except with respect to the claims asserted against defendants Hiren Patel, Fitzgerald, Daddono, and the Advanced Appraisal entities. The motion is entered and continued with respect to those defendants, and plaintiffs are ordered to show cause in writing, by February 7, 2018, why the motion should not also be denied with respect to those defendants.

Date: January 23, 2018        _____
                                          MATTHEW F. KENNELLY
                                      United States District Judge