**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **DELAWARE MOTEL ASSOCIATES, INC., INDEPENDENCE MANAGEMENT ASSOCIATES, INC., TURKEY FOOT LAKE ROAD LAND HOLDINGS, LLC, C. PATEL CO. LLC, CHAMPAKBHAI N. PATEL, and JASHVANTI C. PATEL,** | ) ) ) ) ) ) ) | |
| **Plaintiffs,** | ) ) | |
| **v.** | ) ) | **Case No. 17 C 1715** |
| **CAPITAL CROSSING SERVICING COMPANY LLC, CAPITAL CROSSING HOLDINGS LLC, ADVANCED APPRAISAL GROUP, INC., ADVANCED APPRAISAL CONSULTANTS, INC., ADVANCED APPRAISAL CONSULTANTS, LLC, WILLIAM DADDONO, WOLIN & ROSIN, LTD., SMITHAMUNDSEN LLC THE STATE BANK OF TEXAS, CHANDRAKANT PATEL, HIREN PATEL, EDWARD FITZGERALD, PHOENIX NPL, LLC, PHOENIX REO, LLC, TARRANT CAPITAL ADVISORS, INC., TPG GLOBAL, LLC, TPG CAPITAL L.P., TPG GROUP HOLDINGS (SBS) ADVISORS, INC., TPG SPECIALITY LENDING, INC., TPG OPPORTUNITIES PARTNERS, L.P., NICHOLAS LAZARES, RICHARD WAYNE, DAVID BONDERMAN, and JAMES G. COULTER,** | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Plaintiffs Delaware Motel Associates, Inc., Independence Management

Associates, Inc., C. Patel Co. LLC, Turkey Foot Lake Road Land Holdings LLC, Champbakbhai Patel, and Jashvanti Patel allege that they are victims of a fraudulent loan scheme perpetrated by the defendants.  The plaintiffs have moved for leave to file a fourth amended complaint and have attached a proposed complaint to their motion. The Court concludes that the proposed complaint fails to cure its predecessors' defects and that its new claims are legally deficient.  Because the plaintiffs have failed to address the problems in the complaint despite numerous opportunities to do so, the Court denies the motion with prejudice and dismisses the case without leave to replead.

**Background**

The proposed complaint alleges that the National Republic Bank of Chicago and its associates perpetrated a criminal racketeering enterprise beginning in 2003 by engaging in three broad categories of fraud.  First, National Republic Bank allegedly paid William Daddono and his associates at Advanced Appraisal Group, Inc., Advanced Appraisal Consultants, LLC, and Advanced Appraisal Consultants, Inc. (collectively the Advanced Appraisal entities) to create fraudulently inflated appraisals of commercial real estate properties.  National Republic Bank allegedly used those appraisals to issue loans with inflated principal amounts.  Because the principal amounts were fraudulently inflated, the effective interest rate on those loans relative to the actual value of the properties allegedly constituted an unlawful debt.  Second, the plaintiffs allege that financial "insiders" stole assets from Lehman Brothers and transferred those assets to various entities referred to generally as the Capital Crossing companies, which includes six companies allegedly partnered with Capital Crossing and its owners.  The theft of Lehman Brothers' assets allegedly constituted fraud against a financial institution.

Finally, after National Republic Bank folded in 2014, other entities allegedly purchased the fraudulent loans, including individuals and companies associated with Capital Crossing, "TPG entities," and the State Bank of Texas. The purchasing entities allegedly acquired those loans at a discount by subverting the legitimate bidding process, with full knowledge that the loans had been fraudulently created.

## A. Defendants

The proposed complaint names fifty-eight defendants and alleges that they formed a two-tiered association-in-fact whose purpose was to carry out the alleged racketeering enterprise. Without reciting all of the defendants' names, it is worth distinguishing several categories of defendants. First, the complaint names former National Republic Bank officials Hiran Patel and Edward Fitzgerald. Second, the complaint names William Daddono and the Advanced Appraisal entities, which are allegedly responsible for creating the fraudulent appraisals. Third, the complaint identifies a large set of organizations and individuals who eventually purchased National Republic Bank's loans; this group includes the Capital Crossing companies, its subsidiary "Phoenix" companies, and its "partner" companies, in addition to the "TPG" entities, the State Bank of Texas, and affiliated individuals. Fourth, the complaint names lawyers and law firms who allegedly worked on behalf of the racketeering enterprise, including Wolin & Rosen, SmithAmundsen LLC, and Riemer & Braunstein LLP. Finally, the complaint names Kinzie Property Management and its owner, Steven Spinell, but makes no specific allegations about these defendants or their role in the enterprise.

**B.  Procedural history**

The plaintiffs originally filed this suit in state court.  After the defendants removed the case to federal court, the plaintiffs sought and were granted leave to file a first amended complaint.

In September 2017, the Court granted motions to dismiss plaintiffs' first amended complaint as to all defendants in the case except for Nicholas Lazares, Richard Wayne, Hiren Patel, Edward Fitzgerald, SmithAmundsen, William Daddono, and the Advanced Appraisal entities.  *See Delaware Motel Assocs. v. Capital Crossing Servicing Co.*, No. 17 C 1715, 2017 WL 4224618, at *1 (N.D. Ill. Sept. 22, 2017) (MTD Ruling).  In October 2017, the Court granted Lazares and Wayne's motion for summary judgment on all claims asserted against them.  *See Delaware Motel Assocs. v. Capital Crossing Servicing Co.*, No. 17 C 1715, 2017 WL 4512709, at *1 (N.D. Ill. Oct. 10, 2017).  At the time the Court entered its ruling on the motions to dismiss, Hiren Patel, Fitzgerald, SmithAmundsen, Daddono, and the Advanced Appraisal entities had not yet appeared by counsel, and the Court had not yet set a briefing schedule on Hiren Patel's motion to dismiss.

Plaintiffs then moved for leave to file a second amended complaint and attached a proposed complaint to their motion.  All defendants except for State Bank of Texas, Chandrakant Patel, Fitzgerald, Daddono, and the Advanced Appraisal entities opposed plaintiffs' motion.  After reviewing the second amended complaint, the Court determined that the proposed amendments failed to cure the defects the Court had previously identified and that any new claims had not been adequately alleged or were otherwise legally deficient.  The Court thus concluded that amendment would be futile and denied

plaintiffs' motion as to all defendants except for Hiren Patel, Fitzgerald, Daddono, and the Advanced Appraisal entities.  *See Delaware Motel Assocs. v. Capital Crossing Servicing Co. LLC*, No. 17 C 1715, 2018 WL 509956, at *2 (N.D. Ill. Jan. 23, 2018) (Ruling on 2d Mot. to Amend).

The Court noted in its ruling that Hiren Patel's argument in support of dismissal appeared to have merit and that the same pleading defects that Patel had described also appeared to require dismissal of the claims asserted against Fitzgerald, Daddono, and the Advanced Appraisal entities.  At the time of the Court's ruling, however, the plaintiffs had not had the opportunity to address the possible dismissal of their claims against those defendants.  The Court therefore "allow[ed] plaintiffs the opportunity to respond to [Hiren Patel's] arguments and explain why they believe the proposed allegations are sufficient to state a claim against him" and directed plaintiffs to "address why their allegations against [Fitzgerald, Daddono, and the Advanced Appraisal entities] are sufficient to state a claim, especially in light of the concerns raised about the particularity of the fraud allegations and whether the alleged relationship among the defendants indicates that they were conducting the affairs of a RICO enterprise."  *Id.* at *8.  The final line of the Court's ruling directed plaintiffs "to show cause in writing, by February 7, 2018, why the motion [for leave to amend] should not also be denied with respect to [Hiren Patel, Fitzgerald, Daddono, and the Advanced Appraisal entities]."  *Id.*

On February 7, plaintiffs submitted a "Statement of Cause" and attached a "proposed Fourth Amended Complaint."[1]  In an order dated February 14, 2018, the

---

[1] Plaintiffs had previously attached a "proposed Third Amended Complaint" to a motion to reconsider the Court's denial of the motion for leave to file the second amended complaint.

Court concluded that the plaintiffs had failed to show cause why the claims asserted against all the defendants in either the first amended complaint or the proposed second amended complaint should not be dismissed. The Court therefore dismissed plaintiffs' first amended complaint in its entirety and denied plaintiffs' motion for leave to file a second amended complaint as to all defendants. Order of Feb. 14, 2018 (dkt. no. 175).

The Court then took up the plaintiffs' motion for leave to file a fourth amended complaint. The defendants contend that the proposed fourth amended complaint remains deficient, and they ask the Court to deny further leave to amend. The plaintiffs argue that the proposed complaint resolves the defects in their previous pleadings.

## Discussion

Under Federal Rule of Civil Procedure 15, a party may amend its pleading once as a matter of course, but subsequent amendments require the consent of the opposing party or leave of the court. Fed. R. Civ. P. 15(a). The Seventh Circuit has instructed that district courts "should deny a motion for leave to amend if the proposed amendment is futile, as when, for example, the amended pleading would not survive a motion to dismiss." *Weston v. Ill. Dep't of Human Servs.*, 433 F. App'x 480, 482 (7th Cir. 2011). And a court may deny such a motion with prejudice and without leave to replead when the moving party has failed to cure the same defects after being given multiple opportunities to do so. *See Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818-19 (7th Cir. 2013) (upholding the denial with prejudice of a motion for leave to amend the complaint because the plaintiff "was not making progress toward an acceptable complaint" after three attempts).

To survive a motion to dismiss for failure to state a claim, "a complaint must

contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). Complaints alleging fraud are held to a more stringent standard under Federal Rule of Civil Procedure 9(b), which requires the party to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The Seventh Circuit has interpreted this rule to require stating the "who, what, when, where, and how" of the fraudulent conduct. *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 569 (7th Cir. 2012). In deciding whether the proposed fourth amended complaint would survive a motion to dismiss, the court accepts the complaint's well-pleaded allegations as true and draws all reasonable inferences in the plaintiffs' favor. *See Heng v. Heavner, Beyers & Milhar, LLC*, 849 F.3d 348, 351 (7th Cir. 2017).

**A.    RICO claims**

Counts 1 through 8 of the proposed complaint allege violations of the Racketeer Influenced and Corrupt Organizations Act (RICO). To state a RICO claim under 18 U.S.C. § 1962(c), the plaintiff must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Sabrina Roppo v. Travelers Commercial Ins. Co.*, 869 F.3d 568, 587-88 (7th Cir. 2017). It is not adequate to merely recite those elements, however; the plaintiff "must allege sufficient facts to support each element." *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 727 (7th Cir. 1998). If the plaintiff alleges collection of unlawful debts, he need not otherwise allege a pattern of racketeering activity. *See H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 232 (1989).

The proposed complaint alleges that every defendant violated section 1962(c) by collecting unlawful debts and defrauding a financial institution. It also alleges violations

of sections 1962(a) and (d), which prohibit investing racketeering proceeds and conspiring to engage in racketeering activity, respectively.  For the reasons set forth below, the plaintiffs have failed to state any sort of a RICO claim.

### 1.    Enterprise

To satisfy the "enterprise" element of their RICO claims, the plaintiffs must allege that the defendants "act[ed] together for a common purpose or course of conduct."  *Rao v. BP Prods. N. Am., Inc.*, 589 F.3d 389, 400 (7th Cir. 2009).  In alleging a common purpose, the plaintiff must identify "actions [] undertaken on behalf of the *enterprise* as opposed to on behalf of [the defendants] in their individual capacities, to advance their individual self-interests."  *United Food & Commercial Workers Union & Emp'rs Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849, 854 (7th Cir. 2013).  "[T]he shared goal of financial profit, by each party conducting its own business, does not qualify as a 'common purpose' under RICO."  *D.M. Robinson Chiropractic, S.C. v. Encompass Ins. Co. of Am.*, No. 10 C 8159, 2013 WL 1286696, at *9 (N.D. Ill. Mar. 28, 2013).

The proposed complaint fails to plausibly allege that the defendants shared a common purpose.  Notwithstanding its conclusory allegations of collusion and common goals, the proposed complaint outlines a pattern of activity in which each defendant acted in its own financial self-interest.  In *Walgreen*, the Seventh Circuit held that a complaint alleging a scheme to fraudulently overcharge customers for generic drugs did not satisfy the "enterprise" requirement because "the activities the complaint describes are entirely consistent with [the defendants] each going about its own business."  *Walgreen*, 719 F.3d at 855.  The proposed complaint in this case is similarly deficient: the alleged wrongdoing served the interests of each defendant in the course of

conducting its own business, not a broader criminal enterprise.

The plaintiffs have also failed to address the facial implausibility of their claim that the defendants who acquired National Republic Bank's loans would engage in an elaborate criminal racketeering enterprise to obtain loans that were tainted by fraud. *See* MTD Ruling, 2017 WL 4224618, at *5. The proposed complaint does restate the allegation that the defendants who acquired the loans did so at a steep discount by subverting the legitimate bid process. But this explanation suggests only that the "defendants engaged in illegal activity to benefit themselves," not the enterprise as a whole. *Id.* at *3. Indeed, the complaint alleges that "the Capital Crossing companies and other members of the racketeering enterprise decided to obtain the inflated loans because they believed that the discount would be up to ninety-five [] percent." Proposed Fourth Am. Compl. ¶ 39, dkt. no. 170-1. This narrowly self-interested financial motivation is insufficient to constitute a common purpose as defined by *Walgreen*.

### 2. Conduct

To be liable under section 1962(c), a defendant "must participate in the operation or management of the enterprise." *Goren*, 156 F.3d at 727. As the Court has stated in its earlier rulings in this case, "simply performing services for an enterprise, even with knowledge of the enterprise's illicit nature, is not enough to subject an individual to RICO liability under § 1962(c)." *Id.* at 728; *see also* MTD Ruling, 2017 WL 4224618, at *4; Ruling on 2d Mot. to Amend, 2018 WL 509956, at *3. Operating or managing an enterprise can involve exercising "at least some measure of control over" the participants in the alleged scheme, but does not encompass an individual or entity that

acted as a mere "hireling." *Bachman v. Bear, Stearns & Co., Inc.*, 178 F.3d 930, 932-33 (7th Cir. 1999).

The plaintiffs do not allege specific facts in their proposed fourth amended complaint suggesting that Daddono, the Advanced Appraisal entities, or the law firm defendants operated or controlled the alleged enterprise. As the Court noted in an earlier ruling, another court hearing a parallel lawsuit has already concluded that each of these defendants was no more than a hireling. Ruling on 2d Mot. to Amend, 2018 WL 509956, at *3, *8 (citing *Saleh v. Merchant*, No. 14-CV-09186, 2018 WL 287748, at *6, *8 (N.D. Ill. Jan. 4, 2018)). Nothing in the proposed fourth amended complaint rectifies this defect. Instead, the plaintiffs simply reiterate their allegations that these defendants knew about the underlying fraud. But the fact that the law firms prepared fraudulent loan documents or that the appraisers generated fraudulent valuations—even if they did so with knowledge of the fraud—is insufficient as a matter of law to state a RICO claim, which requires the plaintiffs to allege that the defendants operated or managed the enterprise.

### 3. Fraud

Allegations of fraud must meet the higher pleading standard of Rule 9(b), which requires articulating the "who, what, when, where, and how" of the fraudulent conduct. *Wigod*, 673 F.3d at 569. Even when plaintiffs reasonably lack access to information about the alleged misconduct, "[t]he grounds for the plaintiff's suspicions must make the allegations *plausible*." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 443 (7th Cir. 2011).

The plaintiffs in this case continue to fail to meet that burden. Their allegation

that the loans issued by National Republic Bank were fraudulent depends on the assertion that Daddono and the Advanced Appraisal entities fraudulently inflated appraisal values for the Bank's properties.  But the plaintiffs once again fail to allege this fraud with the requisite specificity.  As before, the "plaintiffs do not provide information about any representations that were made about the appraisals' accuracy, the basis for their allegations about the properties' true values, or other grounds for their suspicions that their appraisals were fraudulent."  Ruling on 2d Mot. to Amend, 2018 WL 509956, at *7.  Though the proposed fourth amended complaint adds a host of previously undiscussed properties to its allegations of fraud, the plaintiffs offer no explanation for the source of the "legitimate" valuations of either the old or the new properties.   Absent such explanations or other allegations that would make the claim of fraud plausible, the plaintiffs have not adequately alleged their claims related to appraisal fraud.

**4.     Standing and proximate cause**

The proposed fourth amended complaint alleges that the racketeering enterprise defrauded the global financial services firm Lehman Brothers when "insiders," including Demetrios Kyrios, Edward F. Mehm, and the Capital Crossing entities, diverted and stole Lehman Brothers assets.  Proposed Fourth Am. Compl. ¶ 459.  But the plaintiffs have not articulated a plausible basis for relief given that they do not have standing to recover for a fraud perpetrated against Lehman Brothers.  The injuries allegedly suffered by the plaintiffs, including lost capital injections and diminution in value of shares, are too remote to state a claim given RICO's proximate cause requirement. *See Hemi Group, LLC v. City of New York*, 559 U.S. 1, 9 (2010) ("Proximate cause for RICO purposes . . . requires some direct relation between the injury asserted and the

11

injurious conduct alleged. . . . A link that is too remote, purely contingent, or indirec[t] is insufficient.") (internal quotation marks omitted) (alteration in original). Because the plaintiffs lack standing with respect to the Lehman Brothers fraud, the RICO claims based on that fraud could not survive a motion to dismiss. *See Sidney Hillman Health Ctr. of Rochester v. Abbott Labs.*, No. 13 C 5865, 2017 WL 5904656, at *2 (N.D. Ill. Feb. 6, 2017) (citing *Walgreen*, 719 F.3d at 856-57).

### 5. Personal jurisdiction

This Court has twice ruled that the plaintiffs had not alleged sufficient minimum contacts with the state of Illinois to confer personal jurisdiction over David Bonderman and James G. Coulter. *See* MTD Ruling, 2017 WL 4224618, at *7; Ruling on 2d Mot. to Amend, 2018 WL 509956, at *7. The plaintiffs once again name both men as defendants without addressing this defect. Instead, they cite 18 U.S.C. § 1965(b), which authorizes nationwide service of process in RICO cases where "it is shown that the ends of justice require that other parties residing in any other district be brought before the court." Because, however, the plaintiffs' RICO claims would not survive a motion to dismiss, they cannot avail themselves of this provision. *See In re Honey Transshipping Litig.*, 87 F. Supp. 3d 855, 871 (N.D. Ill. 2015).

In any event, because the Court denies the motion for leave to amend the complaint with prejudice and without leave to replead, it does not rely on the lack personal jurisdiction over these defendants as a basis for this ruling.

### B. State-law claims

The remaining counts of the proposed complaint allege violations of Illinois law.

### 1.      Illinois Uniform Fraudulent Transfer Act

The plaintiffs seek to recover against the Capital Crossing defendants under the Illinois Uniform Fraudulent Transfer Act (IUFTA), alleging that they are entitled to recover because Capital Crossing's assets are threatened by Lehman Brothers' ongoing bankruptcy litigation.

The Court has rejected this proposed claim once before, noting that Illinois law requires that the plaintiffs were creditors of the defendants at the time the allegedly fraudulent transfer was made. S*ee Mandolini Co. v. Chi. Produce Suppliers, Inc.*, 184 Ill. App. 3d 578, 581, 540 N.E.2d 505, 507-08 (1989).  In response, the plaintiffs cite *A.P. Props. v. Goshinsky*, 186 Ill. 2d 524, 529, 714 N.E.2d 519, 522 (1999), for the proposition that anyone who had "a right to payment" at the time of transfer may sue under the IUFTA, whether or not that claim was vested or reduced to judgment.  But *Goshinsky* also held that the definition of a "right to payment" is not "all encompassing," and "the Act requires a debtor / creditor relationship."  *Id.*.  These limitations indicate that the plaintiffs' claim is not cognizable under the IUFTA.  At the time the allegedly fraudulent transfer was made, the Capital Crossing defendants could not plausibly have been considered debtors of the plaintiffs; indeed, they were the plaintiffs' creditors.  The plaintiffs have failed to allege facts indicating that they were creditors of the Capital Crossing defendants at the time of the transfer and have therefore failed to state a claim under the IUFTA.

### 2.      Fraud

Counts 10, 11, and 12 raise various fraud claims under Illinois law against each of the defendants, including violations of the Consumer Fraud and Deceptive Practices

Act.  But the plaintiffs' state-law fraud allegations suffer the same deficiencies as the federal-law claims, namely that they cannot satisfy the heightened pleading requirements of Rule 9(b) without alleging specific facts that would make it plausible that the defendants used fraudulently inflated appraisal values included in the loan documents.  For the reasons discussed above with respect to the federal claims, the proposed complaint does not state a claim for fraud.

### 3.  Breach of fiduciary duty

Counts 14 and 15 of the proposed complaint raise two new claims for breach of fiduciary duty.  Both claims depend on the allegation that certain defendants owed a fiduciary duty to the plaintiffs in their capacity as closing agents, and that they breached that duty by failing to disclose the allegedly fraudulent loan valuations.  Once again, however, the plaintiffs' claims fail because they depend on an underlying allegation of appraisal fraud that the proposed complaint does not adequately allege.

To the extent the plaintiffs allege other breaches of fiduciary duty besides non-disclosure of the allegedly fraudulent appraisals—for example, that the defendants "breach[ed] their fiduciary duty to follow the escrow instructions"—they fail to state facts that would explain or substantiate those claims, such as the pertinent content of the closing documents or the nature of the breach.

### 4.  Unjust enrichment

The plaintiffs' final state-law claim alleges unjust enrichment by all of the defendants.  A claim for unjust enrichment requires the plaintiff to have "conferred a benefit upon the defendant which the defendant has unjustly retained." *City of Elgin v. Arch Ins. Co.*, 2015 IL App (2d) 150013, ¶ 28, 53 N.E.3d 31, 42.  Though the plaintiffs

14

broadly allege that the "defendants" retained payments and services that the plaintiffs conferred, they have not stated a claim for unjust enrichment with respect to most of the defendants because they have not alleged that they paid or performed services for more than a few of them.  In any case, the claim for unjust enrichment would not survive a motion to dismiss because the plaintiffs have not sufficiently alleged underlying claims of fraud that would tend to show that the defendants were unjustly enriched.

### Conclusion

For the foregoing reasons, the Court denies the plaintiffs' motion for leave to file a fourth amended complaint [dkt. no. 170].  Because the plaintiffs have had several opportunities to remedy the recurring defects in their pleadings and have failed to do so, the Court denies the motion with prejudice and without leave to replead.  The Clerk is directed to enter judgment dismissing all of the plaintiffs' claims with prejudice.

_____
MATTHEW F. KENNELLY
United States District Judge

Date:  October 4, 2018