**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **DELAWARE MOTEL ASSOCIATES, INC., INDEPENDENCE MANAGEMENT ASSOCIATES, INC., TURKEY FOOT LAKE ROAD LAND HOLDINGS, LLC, C. PATEL CO. LLC, CHAMPAKBHAI N. PATEL, and JASHVANTI C. PATEL,** | ) ) ) ) ) ) ) | |
| **Plaintiffs,** | ) ) | |
| **v.** | ) ) | **Case No. 17 C 1715** |
| **CAPITAL CROSSING SERVICING COMPANY LLC, CAPITAL CROSSING HOLDINGS LLC, ADVANCED APPRAISAL GROUP, INC., ADVANCED APPRAISAL CONSULTANTS, INC., ADVANCED APPRAISAL CONSULTANTS, LLC, WILLIAM DADDONO, WOLIN & ROSEN, LTD., SMITHAMUNDSEN LLC, THE STATE BANK OF TEXAS, CHANDRAKANT PATEL, HIREN PATEL, EDWARD FITZGERALD, PHOENIX NPL, LLC, PHOENIX REO, LLC, TARRANT CAPITAL ADVISORS, INC., TPG GLOBAL, LLC, TPG CAPITAL L.P., TPG GROUP HOLDINGS (SBS) ADVISORS, INC., TPG SPECIALITY LENDING, INC., TPG OPPORTUNITIES PARTNERS, L.P., NICHOLAS LAZARES, RICHARD WAYNE, DAVID BONDERMAN, and JAMES G. COULTER,** | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| **Defendants.** | ) ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

The plaintiffs in this suit alleged that the defendants were involved in a

racketeering scheme involving commercial real estate loans that were issued based on

false and inflated appraisals.  After finding that multiple iterations of the plaintiffs'
complaint failed to state a claim for relief, the Court ultimately denied their motion to file
a fourth amended complaint and entered judgment in favor of the defendants.  Two of
those defendants—the law firms SmithAmundsen LLC and Wolin & Rosen, Ltd.—have
moved for sanctions against the plaintiffs' attorney, Paul Caghan.  For the reasons set
forth below, the Court denies the motion.

## Background

The Court assumes familiarity with its prior written opinions in this case.  *See*
*Delaware Motel Assocs., Inc. v. Capital Crossing Servicing Co.* (*Ruling on Motions to*
*Dismiss*), No. 17 C 1715, 2017 WL 4224618 (N.D. Ill. Sept. 22, 2017); *Delaware Motel*
*Assocs., Inc. v. Capital Crossing Servicing Co.* (*Summary Judgment Ruling*), No. 17 C
1715, 2017 WL 4512709 (N.D. Ill. Oct. 10, 2017); *Delaware Motel Assocs., Inc. v.*
*Capital Crossing Servicing Co.* (*Order Denying Leave to File Second Amended Compl.*),
No. 17 C 1715, 2018 WL 509956 (N.D. Ill. Jan. 23, 2018); *Delaware Motel Assocs., Inc.*
*v. Capital Crossing Servicing Co.* (*Order Denying Leave to File Fourth Amended*
*Compl.*), No. 17 C 1715, 2018 WL 4829598 (N.D. Ill. Oct. 4, 2018).  What follows is an
abbreviated summary of the relevant procedural history.

The plaintiffs filed suit in Illinois state court in early 2017, alleging a far-reaching
scheme of appraisal fraud.  They named seventeen defendants in their complaint,
including SmithAmundsen and Wolin & Rosen.  They alleged that the defendants
engaged in a multi-part scheme to generate fraudulent appraisals for the plaintiffs' real
estate properties and issue loans based on those appraisals.  The plaintiffs contended
that SmithAmundsen and Wolin & Rosen participated in the scheme by fraudulently

withholding the false appraisal information, preparing fraudulent closing documents, and securing the foreclosure of the plaintiffs' properties based on their prior fraud.

The defendants removed the case to federal court, and it was assigned to the undersigned judge. Certain defendants moved to dismiss the complaint for failure to state a claim, while others filed a motion for summary judgment. The Court granted the motion for summary judgment filed by certain defendants but granted the plaintiffs leave to file an amended complaint, in which they named ten additional defendants. *See* dkt. no. 45.

The defendants again filed several motions to dismiss the amended complaint. The Court granted those motions on September 22, 2017. *See Ruling on Motions to Dismiss*, 2017 WL 4224618, at *1. It held that the plaintiffs had not adequately alleged the existence of a RICO enterprise and had not alleged their fraud claims with the required particularity. *Id.* at *8-15. The Court also dismissed the plaintiffs' state-law claims for fraud, tortious interference, and unjust enrichment for failure to state a claim. *Id.* at *16-18. Finally, the Court held that it lacked personal jurisdiction over two individual defendants. *Id.* at *18-19.

In a separate opinion issued shortly thereafter, the Court granted summary judgment in favor of two individual defendants. *See Summary Judgment Ruling*, 2017 WL 4512709, at *1. The Court found that the plaintiffs had introduced no evidence to substantiate their allegations that those defendants had participated in the alleged fraud scheme. *Id.* at *5-7.

The plaintiffs again moved to amend their complaint. After the parties fully briefed the motion, the Court denied leave on January 23, 2018, reasoning that the

amended complaint would be futile because it would not survive a motion to dismiss. *Order Denying Leave to File Second Amended Compl.*, 2018 WL 509956, at *5. With respect to SmithAmundsen and Wolin & Rosen, the Court found that the proposed second amended complaint failed to "adequately allege that the law firms conducted the affairs of an enterprise or agreed to do so" as required to state a RICO claim against them. *Id.* at *8.

That ruling did not dispose of the case, however, because several defendants had filed motions to dismiss to which the plaintiffs had not yet had the opportunity to respond. The Court ordered the plaintiffs to show cause why the claims in proposed second amended complaint would survive motions to dismiss by those defendants. *Id.* at *20.

The plaintiffs moved for reconsideration of the ruling denying leave to amend. *See* dkt. no. 167. They attached a proposed third amended complaint to that motion. Five days later, the plaintiffs filed a statement of cause why the remaining defendants' motions to dismiss should not be granted, *see* dkt. no. 170, to which they attached a proposed fourth amended complaint.

The Court ruled that the plaintiffs had failed to show cause and dismissed the first amended complaint in its entirety. Dkt. no. 175. It also denied the motion for reconsideration, dkt. no. 177, but set a briefing schedule on the motion for leave to file the proposed fourth amended complaint, dkt. no. 178.

Finally, on October 4, 2018, the Court denied leave to amend the complaint. *See Order Denying Leave to File Fourth Amended Compl.*, 2018 WL 4829598. Noting that the plaintiffs had repeatedly failed to adequately allege facts that stated a claim for

4

relief, the Court denied the motion with prejudice and without leave to replead. *Id.* at *15.

SmithAmundsen and Wolin & Rosen have moved for sanctions against the plaintiffs' attorney, Paul Caghan. Caghan filed a cross-motion for sanctions, which the Court denied. Dkt. no. 194. The Court now denies the motion by SmithAmundsen and Wolin & Rosen.

## Discussion

Federal Rule of Civil Procedure 11 "imposes a duty on attorneys to ensure that any papers filed with the court are well-grounded in fact, legally tenable, and not interposed for any improper purpose." *Brunt v. Serv. Emps. Int'l Union*, 284 F.3d 715, 721 (7th Cir. 2002). A court may sanction an attorney for breaching this duty after giving the attorney notice and a reasonable opportunity to respond. Fed. R. Civ. P. 11(c)(1).

A court may also impose sanctions under 28 U.S.C. § 1927, which prohibits attorneys from "multipl[ying] the proceedings in any case unreasonably and vexatiously." Although sanctions under section 1927 are appropriate only if the attorney has acted in bad faith, the Seventh Circuit has held that this requirement is satisfied if the attorney "pursues a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound." *Bell v. Vacuforce, LLC*, 908 F.3d 1075, 1081-82 (7th Cir. 2018).

As a preliminary matter, the Court notes that in their motion for sanctions the movants purport to incorporate "all arguments from their motions to dismiss, opposition to plaintiffs' motions for leave to amend, and briefs in support of same." Mot. for

5

Sanctions, dkt. no. 184, at 4.  This is inappropriate.  Rule 11(c)(2) requires a moving party to make a motion for sanctions "separately from any other motion" and "describe the specific conduct that allegedly violates Rule 11(b)."  Motions under section 1927 similarly must articulate bases for relief in a separate filing.  *Mitchell v. NFL Player Annuity Program*, 255 F. Supp. 3d 781, 791 (N.D. Ill. 2017).  Defendants' attempt to incorporate their prior arguments by reference is particularly inappropriate given the volume of filings in this case.  For these reasons, the Court will consider only the arguments raised properly within the motion.

## A.      Improper purpose

The movants argue that Caghan brought this suit with the improper purpose of collaterally challenging the judgments in Ohio state court that foreclosed on the plaintiffs' properties.  According to Rule 11(b)(1), improper purposes include harassment, unnecessary delay, and needlessly increasing the cost of litigation.  More generally, the Seventh Circuit has characterized improper purposes as "abusive litigation practices."  *Beeman v. Fiester*, 852 F.2d 206, 209 (7th Cir. 1988), *abrogated on other grounds by Mars Steel Corp v. Cont'l Bank N.A.*, 880 F.2d 928 (7th Cir. 1989).  The movants point to no authority suggesting that a party's attempt to indirectly challenge the outcome of an earlier case constitutes a similarly impermissible motive.  Indeed, the movants' reasoning would imply that every case that a court finds to barred by claim preclusion was filed for an improper purpose—a proposition for which the movants offer no authority.

The movants also argue that Caghan improperly attempted to use the plaintiffs' complaint "as a vehicle for obtaining discovery" to which the plaintiffs were not entitled.

Mot. for Sanctions, dkt. no. 184, at 10. The movants' sole evidence for this claim is that the plaintiffs unsuccessfully sought discovery from one of SmithAmundsen's former clients in a related case. But the inference that Caghan filed this suit for the purpose of obtaining that discovery indirectly through SmithAmundsen is unsubstantiated speculation that cannot support the movants' request for sanctions.

Because the movants have cited no evidence or authority to substantiate their allegations of improper purpose, the Court declines to impose sanctions on that basis.[1]

## B.    Legal frivolousness

An attorney may be sanctioned under Rule 11(b)(2) or 28 U.S.C. § 1927 for bringing legally frivolous claims. *Maxwell v. KPMG LLP*, 520 F.3d 713, 719 (7th Cir. 2008) (Rule 11); *Lightspeed Media Corp. v. Smith*, 761 F.3d 699, 709 (7th Cir. 2014) (section 1927). The movants argue that the plaintiffs' claims were doomed to fail, citing a bevy of immunity and privilege doctrines that they contend posed a total bar to relief.

The movants' arguments are largely unpersuasive. First, they cite the Illinois Appellate Court's decision in *Northern Trust Co. v. VIII South Michigan Associates*, 276 Ill. App. 3d 355, 364-65, 657 N.E.2d 1095, 1102-03 (1995). The court in *Northern Trust* held that lenders are not liable for fraud if they fail to disclose the indebtedness of other borrowers on the same loan. The movants have not shown, however, that *Northern Trust* is a bar to relief in this case. The court in *Northern Trust* did not consider, for example, whether attorneys who prepared loan documents could be liable for knowingly misrepresenting the value of property, as the plaintiffs alleged certain defendants did.

---

[1] The movants' other arguments concerning Caghan's allegedly improper purpose are forfeited because they were raised for the first in a reply brief. *See, e.g.*, *De Silva v. Cinquegrani*, No. 11 C 4259, 2014 WL 3954990, at *4 n.4 (N.D. Ill. Aug. 13, 2014).

The court's holding that a financial institution "owes no duty of care to the borrower when preparing an appraisal of the borrower's collateral," *id.* at 365, 657 N.E.2d at 1102, is similarly irrelevant to the viability of the plaintiffs' claims.

Second, the movants point out that the plaintiffs' complaints failed to allege that the law firm defendants participated in a RICO enterprise. They correctly note that law firms do not participate in a RICO enterprise if they act as mere hirelings. *See Bachman v. Bear, Stearns & Co.*, 178 F.3d 930, 933 (7th Cir. 1999). But this principle does not mean that the plaintiffs' claims were legally frivolous from the outset; the law firms might have been liable if they exercised "at least some measure of control over" the entities that conducted the pattern of racketeering activity. *Id.* at 932. The fact that the plaintiffs ultimately failed to plead this element with the requisite specificity does not mean that their complaints were sufficiently frivolous to warrant sanctions. *See Harlyn Sales Corp. Profit Sharing Plan v. Kemper Fin. Servs., Inc.*, 9 F.3d 1263, 1270 (7th Cir. 1993) ("[S]anctions do not inevitably flow from being wrong on the law. Otherwise Rule 11 sanctions would be imposed whenever a complaint was dismissed . . . [T]he Rule may not be so interpreted.").

Third, the movants rely on three related privileges: the absolute litigation privilege, the qualified attorney privilege, and the *Noerr-Pennington* doctrine. The Court is not persuaded that any of these doctrines posed such a significant barrier to relief that it rendered the plaintiffs' complaints frivolous. The absolute litigation privilege originates in a rule designed to protect attorneys from liability for defamation based on their statements during litigation, although it may apply more widely to other causes of action. *O'Callaghan v. Satherlie*, 2015 IL App (1st) 142152, ¶¶ 25-27, 36 N.E.3d 999,

8

1008-09.  But the litigation privilege is limited "to instances where the administration of justice and public service require immunity."  *Id.* ¶ 42, 36 N.E.3d at 1008.  In light of this limitation, the movants have not shown that the privilege would necessarily preclude the plaintiffs' claims based on allegations that the defendants systematically defrauded them.

The qualified attorney privilege protects attorneys who advise their clients in good faith.  This privilege bears no relation to the plaintiffs' contentions in this case, however.  The only remotely relevant case the movants cite concerns an attorney who gave bad advice to a client, causing the client to enter into a contract with a third party.  *See, e.g.*, *Schott v. Glover*, 109 Ill. App. 3d 230, 234-35, 440 N.E.2d 376, 379 (1982).  The attorney's limited privilege protects her from liability to the client or the third party based on that faulty advice.  *Id.*  The movants altogether fail to explain how this doctrine is relevant to their motion.

The *Noerr-Pennington* doctrine is equally inapposite.  It applies in antitrust cases where groups use "courts to advocate their causes and points of view respecting resolution of their business and economic interests vis-à-vis their competitors."  *BE&K Constr. Co. v. NLRB*, 536 U.S. 516, 525 (2002).  One federal court of appeals explained that the doctrine is designed to "avoid burdening conduct that implicates protections afforded by the Petition Clause" of the United States Constitution.  *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 931 (9th Cir. 2006).  But the movants do not cite any binding authority holding that *Noerr-Pennington* creates immunity for RICO claims in addition to antitrust claims.  Even if they had, however, there is at least a colorable argument that the sham exception to *Noerr-Pennington* would apply given the plaintiffs' allegations of

9

fraud. *See Mercatus Grp., LLC v. Lake Forest Hosp.*, 641 F.3d 834, 843 (7th Cir. 2011) ("[A] misrepresentation renders an adjudicative proceeding a sham only if the misrepresentation (1) was intentionally made, with knowledge of its falsity; and (2) was material, in the sense that it actually altered the outcome of the proceeding.").

Fourth, the movants argue that the plaintiffs' state-law claims were doomed to fail. They contend that they cannot be liable for a breach of fiduciary duty because they owed no duty to non-clients. The plaintiffs point out that under Illinois law, escrowees have a fiduciary duty to act in accordance with the terms of the escrow instructions. *Freedom Mortg. Corp. v. Burham Mortg., Inc.*, 720 F. Supp. 2d 978, 997-98 (N.D. Ill. 2010). Although the Court previously found that the plaintiffs did not plead this claim with sufficient particularity, the fact that escrowees sometimes owe fiduciary duties makes prevents this claim from being legally frivolous.

Relatedly, the movants contend that attorneys and law firms can never be liable under the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA), citing *Kosydor v. American Express Centurion Services Corp.*, 2012 IL App (5th) 120110, 979 N.E.2d 123. The plaintiffs argue, however, that despite its seemingly broad holding, *Kosydor* should not apply to the movants' alleged pattern of criminal activity because their misconduct was so extreme. Whether or not the plaintiffs would have ultimately prevailed on this argument, it constitutes "a nonfrivolous argument for extending, modifying, or reversing existing law." *Foreman v. Wadsworth*, 844 F.3d 620, 626 (7th Cir. 2016).

Lastly, the movants' strongest argument in favor of sanctions concerns Caghan's repeated efforts to file complaints that he knew or should have known were not legally

10

viable. The fact that Caghan's proposed amended complaints contained many of the same defects arguably supports the conclusion that he persisted in filing claims that a reasonable lawyer would have recognized as meritless.

The argument fails, however, because it was not properly raised in the movants' motion for sanctions. Before imposing a monetary sanction, due process requires the Court to afford Caghan a "meaningful opportunity to be heard." *Boyer v. BNSF Ry. Co.*, 832 F.3d 699, 702 (7th Cir. 2016). It is not enough that Caghan was notified that the movants generally sought sanctions; he must be specifically apprised of the *reasons* he could be sanctioned. *Cf. Johnson v. Cherry*, 422 F.3d 540, 553 (7th Cir. 2005) ("Any further proceedings as to potential sanctions must . . . afford [the attorney] notice of the specific bases on which the court is contemplating sanctions and an adequate opportunity to respond."). The movants only vaguely hint at this argument in their motion by stating that "Mr. Caghan has persisted in pursuing claims of the nature that were [] rejected by this Court." Mot. for Sanctions, dkt. no. 184, at 11. This brief and conclusory observation gave Caghan insufficient notice of this alleged basis for sanctions, and the movants' more substantial explanation in their reply brief cannot cure that omission.

## C.    Lack of factual basis

The movants argue that sanctions are appropriate because the plaintiffs' claims lacked an adequate basis in fact. In their opening brief, the movants cite *Jimenez v. Madison Area Technical College*, 321 F.3d 652 (7th Cir. 2002), to argue that Caghan should be sanctioned for making false allegations. But that case does not support the imposition of sanctions against Caghan. *Jimenez* concerned a plaintiff who, as the

district court determined in an evidentiary hearing, knowingly submitted fraudulent documents to support her claim of employment discrimination. *Id.* at 655. In this case, by contrast, the Court has made no findings about the truth of the plaintiffs' allegations. The movants also contend that it was improper for Caghan to file complaints that "lumped SmithAmundsen in with all other Defendants when SmithAmundsen is not alleged to have been involved with any particular loan closings." Mot. for Sanctions, dkt. no. 184, at 5. They fail to explain, however, why the allegations about SmithAmundsen were improper or why they amounted to false statements of fact that warrant sanctions under *Jimenez*.

The movants significantly expand their argument in their reply brief, listing numerous allegations in the complaints that they argue are implausible and inflammatory. The movants appear to argue, though they do not expressly say, that Caghan breached his duty to conduct a reasonable inquiry into the factual basis for the pleadings. *See, e.g.*, *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990) ("Rule 11 imposes a duty on attorneys to certify that they have conducted a reasonable inquiry and have determined that any papers filed with the court are well grounded in fact. . . ."). As the Court previously noted, however, a movant may not raise new bases for sanctions in its reply brief. The allegation that Caghan failed to adequately investigate the plaintiffs' claims appears nowhere in the motion for sanctions, and the discussion of the alleged falsehoods is too cursory in the movants' opening brief to permit sanctions against Caghan. The Court therefore declines to sanction Caghan for filing a suit with an inadequate basis in fact.

**D.  Vexatious litigation conduct**

The Court has already addressed most of the movants' allegations of vexatious conduct under section 1927. They make one additional argument in their reply brief, however: that the Court should sanction Caghan for filing pleadings that were unnecessarily long and repetitive. Although it is true that the plaintiff's proposed fourth amended complaint was excessively long, spanning 193 pages and 744 separate numbered paragraphs, the movants yet again failed to raise this argument in their initial motion. The Court therefore declines to consider this as a separate basis for sanctions.

**E.    Pattern of similar litigation**

Finally, the movants argue that sanctions are appropriate in light of Caghan's pattern of filing unsuccessful cases alleging the existence of a similar appraisal fraud scheme. They first cite *Saleh v. Merchant*, No. 14-CV-9186 (N.D. Ill.), a parallel case in front of Judge John Tharp. Their reference to *Saleh* proves unhelpful, however. Recently, Judge Tharp partially denied a motion to dismiss the crossclaim after the cross-plaintiffs alleged facts sufficient to state a claim under RICO. *Saleh v. Merchant*, No. 14-CV-9186, 2019 WL 1331788 (N.D. Ill. Mar. 25, 2019). Although Judge Tharp dismissed the claims against SmithAmundsen and Wolin & Rosen, he noted that the allegations against Wolin & Rosen presented a close question, and he ultimately resolved them with reference to an issue—the statute of repose—that the movants do not even mention in their briefs in support of sanctions. *Id.* at *6-8. The decision in *Saleh* suggests that Caghan has pursued these same claims with at least limited success, suggesting that the plaintiffs' allegations are not facially meritless.

The movants cite several other cases that they contend illustrate a pattern of frivolous and vexatious conduct by Caghan. They offer only a cursory description of the

circumstances of those cases, however, and the Court is unwilling to conclude that they

justify the imposition of sanctions in this case.  Although the fact that Caghan did not

prevail on RICO claims he brought in other cases may constitute some evidence of a

pattern of vexatious conduct, the Court concludes that it has limited value to

determining whether Caghan's conduct in this case warrants a monetary sanction.

**Conclusion**

For the foregoing reasons, the Court denies the defendants' motion for sanctions

[dkt. no. 184].

MATTHEW F. KENNELLY
United States District Judge

Date:  May 1, 2019